SAMUEL BOULTON et al. v. The Administrators of JONATHAN SCOTT et al.

The decree of the orphans' court upon the final settlement of the accounts of administrators, adjudging that due and legal notice of such settlement was given, is final and conclusive, and this court cannot afterwards inquire into the fact of notice.

In the exercise of the power of the court to relieve against fraud, the court will extend its aid for the relief of parties, whether the subject infected with fraud be a simple contract, a deed or a judgment.

Judgments of courts of law are liable to be relieved against on account of fraud in the procurement of them, and the same principle applies to decrees on judgments of the orphans' court.

The act declaring the sentences and decrees of the orphans' court final and conclusive, only places them on a footing with other courts, and does not at all interfere with or abridge the jurisdiction of the court of chancery over the same subject matter.

It is not enough that the orphans' court may have erred in judgment as to a subject matter properly before them ; they must have been led into error by some fraudulent and unconsciencious act or omission of the party to be benefitted, or this court can take no cognizance of it.

It is not the province of a court of equity to review the sentences or judgments of other tribunals, to ascertain whether they have erred in the exercise of their judicial power and discretion in matters over which they had complete jurisdiction.

Legatees cannot call upon the administrator of the executor of the will for the payment of legacies. Such administrator must account with an administrator de bonis non of the testator, and the administrator de bonis non must account with the legatees.

BILL by residuary legatees for an account, and for payment of the balance found due, filed June twenty-sixth, 1832. The

cause was heard upon bill, answer, replication and proofs. The material facts disclosed by the pleadings and evidence, are contained in the chancellor's opinion.

*A. Brown* and *Wall,* for complainants.

*Wilson* and *Southard,* for defendants.

Cases cited by defendants' counsel. *Rev. Laws,* 777, 787; 3 *John. Chan. R.* 375; 2 *Vesey,* 135; 2 *John. Chan. R.* 512; 1 *Sch. and Lef.* 201.

THE CHANCELLOR. This is a bill by residuary legatees, for an account generally, and for payment of the balance found due. Priscilla Scott died in 1797, leaving a last will and testament, of which Jonathan Scott was appointed the executor. After ordering her debts and expenses to be paid, and making some small bequests, she gave the residue of her estate, all of which consisted of personal property, to the children of her two daughters, Hannah Boulton and Esther Johnson, to be paid to them in equal portions as they should severally arrive at age. The inventory amounted to three hundred and seventy-nine pounds eleven shillings and eleven pence—equal to one thousand and twelve dollars and twenty-six cents; and the bill charges that after paying the debts and expenses, there remained in the hands of the executor a considerable balance as the residuum of the estate. That the said executor paid at different times to each of the residuary legatees under the will, the sum of twenty pounds in the whole, and no more; and without having made any settlement of the estate in the orphans' court, he departed this life in 1831, intestate; whereupon administration upon his estate and effects was granted to Henry Scott and Robert J. Sutton. The bill then, after stating various pretences of the said defendants, and among others, that the said administrators had obtained letters of administration de bonis non cum testamento annexo, of the goods, rights and credits of Priscilla Scott, deceased, in February, 1831, and

in August of the same year exhibited their account of the estate of the said Priscilla Scott, to the orphans' court of Burlington, for allowance, and that the same was allowed and the balance struck and ascertained; and that the estate of Jonathan Scott is exonerated from all claims beyond the balance appearing by said account to remain in the hands of the said administrators. Charges that the complainants had no notice whatever of the intention of the said Henry Scott and Robert J. Sutton to exhibit such account to the orphans' court, until after the decree obtained; that there is fraud and mistake apparent upon the face of the account, inasmuch as they have neglected to charge themselves with interest on the balance in their hands; wherefore the complainants submit that the pretended settlement constitutes no legal bar to the recovery of their just claims. There are other charges not material to be adverted to. The bill prays for an account of all and singular the estate of Priscilla Scott, which came to the hands of the said Jonathan Scott in his life time, or which was received by him or any other person by his order or for his use, &c., and that the residue may be paid to the complainants.

The answer of the administrators of Jonathan Scott, stating themselves to be also administrators of Priscilla Scott, de bonis non cum testamento annexo, admits the will of Priscilla Scott, the inventory, &c. It states that they loaned eight hundred dollars to one John Hoskins, on his bond, and that he was in flourishing business; that he paid the interest for fourteen years, and in 1820 became insolvent; that the administrators received ten per cent of the amount due, being all that could be obtained. The administrators admit that Jonathan Scott, as executor, did not render an account of his administration of the estate, and allege that they do not know what amount came to his hands.

They admit that after the death of Jonathan Scott, they took out letters of administration upon his estate, and also letters of administration with the will annexed upon the goods, &c. of Priscilla Scott, not administered. Finding no account of the property of Priscilla Scott, that had come to the hands of Jonathan Scott, they caused or procured an appraisement to be made

[Boulton et al. v. Adm'rs of Scott et al.]

on the nineteenth of May, 1831, amounting to twelve hundred and thirty-seven dollars and forty-four cents, and filed it in the surrogate's office. They have received no goods or chattels of the estate of Priscilla Scott, except so far as the receipt of the estate of Jonathan Scott shall be considered a receipt of the estate of Priscilla Scott, to the amount in his hands at the time of his death. That on or about the thirtieth of June, 1831, they exhibited to the surrogate their account of so much of the estate of Priscilla Scott as came to the hands of Jonathan Scott in his life time, or to their hands as administrators, and of his and their payments out of the same; which account, after being audited, was allowed at August term, then next; that notice was given of their intention to exhibit their account, and no exceptions were made to the same. They insist, therefore, that the complainants had legal notice of the intention of the said administrators to exhibit their account, and that the decree is binding and conclusive upon the complainants. They deny the charge of fraud or mistake, and allege that even if there should be fraud and mistake that the account is final, unless such fraud or mistake be proved to the orphans' court, and upon such proof a resettlement of the account be ordered by the orphans' court.

Considerable testimony was taken respecting the alleged loss of the money loaned to Hoskins, but the whole of it was very properly laid out of the case upon the argument. The evidence is not such as to authorize any claim for allowance.

The defendants admit the claim of the complainants to a certain extent; that is to say, they admit there is in their hands as administrators de bonis non cum testamento annexo of Priscilla Scott, deceased, the amount found due from them by the decree of the orphans' court, and for which they are ready to account. With this the complainants are not satisfied. They insist that inasmuch as the decree was made and the account passed without lawful notice, and as there is fraud and mistake in it, it forms no bar to their claim for a general account. In answer to this, the defendants allege that there was lawful notice, and that if it be a proper subject for the inquiry of this court at this time, the

evidence is sufficient to prove it. They deny the charge of fraud or mistake, and set up in their answer that this court has no jurisdiction or authority to look into that question; that by statute it belongs exclusively to the orphans' court, and that the application for redress should be there.

1. As to the notice given by the administrators. Upon this point, the judgment and decree of the orphans' court is final and conclusive on this court. It cannot review the decree of the orphans' court, nor consider it as a nullity. That court has adjudicated upon the subject, and it has decreed that due and legal notice of the intended settlement was given. That fact forms a part of the sentence of the court; and that sentence being now set up as a bar, this court cannot go into the question of irregularity, but must take it that the fact was properly and sufficiently proved. I do not mean to say that the want of legal notice might not be assigned for cause of error, in a proceeding fitly brought, to reverse and set aside the decree, before a proper tribunal. With that question I have nothing to do. I desire to be understood as simply saying, that the fact that these defendants, as administrators de bonis non, &c. of Priscilla Scott, gave notice that they would settle their account as such administrators, must be taken as conclusively settled by the orphans' court.

It will be observed that there is no charge of fraud connected with the charge of want of notice. It is not alleged that under an insufficient notice they proceeded to settle matters that did not appertain to their office, and that they made such notice a cloak and thereby deceived others. Something of that kind was hinted at in the argument; but there is nothing of it charged in the bill. That seeks to avoid the decree upon the final account, on two grounds only; the one is want of notice, the other fraud and mistake apparent on the face of the account itself. I think that upon general principles, well established, this court cannot inquire into the fact of notice. Such was the opinion of the court in the case of *Burtis* v. *Adm'rs of Hopkins*. To a bill for an account and to avoid a settlement of an insolvent estate, made in the orphans' court of the county of Monmouth, on the ground that the

[Boulton et al. v. Adm'rs of Scott et al.]

decree had been obtained without giving the proper notice required by the act, the defendants set up the decree itself by way of plea, and the plea was allowed.

But if I should be in error on this point, I am of opinion that the fact of notice is sufficiently established. The court, upon the allowance of the account, certify, that it appears to them that it has been advertised according to law; and this certificate is founded on the affidavit of the two administrators, taken before the surrogate in the usual form. Besides this, two witnesses have testified to having seen notices posted up in public places in the county. One saw a notice at Rogers's public house in Burlington city, and the other saw one at Bustleton in said county; both informing that the defendants, as administrators of Priscilla Scott, deceased, intended to exhibit their final account at the August term (1831) of the orphans' court of the county of Burlington. This evidence, I apprehend, would be sufficient, if it were incumbent on the defendants to establish and prove the fact.

2. The next ground taken by the complainants is, that there is fraud and mistake apparent on the face of the account; and therefore they are entitled to have the account restated, it forming no bar to their claim.

The defendants, as has already been stated, deny the fact, and they deny the jurisdiction of the court to inquire into the fact.

It will be proper to ascertain, in the first place, whether the court has jurisdiction. If it has not, it will be saved the trouble of an investigation.

Fraud is one of the most extensive and useful heads of equity jurisdiction; and in the exercise of its power under this head, the court has exerted its aid for the relief of parties, whether the subject infected with fraud was a simple contract, a deed or a judgment. The judgments of courts of law are liable to be relieved against, on account of fraud in the procurement of them; and such has been the practice of this court from the earliest periods of its history. Vide *Barnesley* v. *Powell*, 1 *Vesey*, 289. Awards, if fraudulently obtained, may be set aside in equity: *Brown* v.

[Boulton et al. v. Adm'rs of Scott et al.]

*Brown*, 1 *Vernon*, 157, and the cases there cited, (Raithby's edition.) A court of equity will give relief against a verdict fraudulently obtained: *Bateman* v. *Willoe*, 1 *Sch. and Lef.* 205 ; and against the probate of a will procured by fraud, 1 *Ves.* 290. And it has even been held that a private act of parliament, obtained upon fraudulent suggestions, may be relieved against : 2 *Comm.* 346 ; *Hargrave's Jur. Argum.* v. 2, 392 ; *McKenzie* v. *Stewart, Dom. Proc.* 1754 ; *Cruise Dig. Tit.* 33 ; *Private Act*, 50, 51. A decree of this court, obtained by fraud, may be set aside upon an original bill, in the nature of a bill of review : *Mussell* v. *Morgan*, 3 *Bro. C. C.* 74 ; *Richmond* v. *Tayleur*, 1 *P. Wms.* 734 ; *Loyd* v. *Mansell*, 2 *P. Wms.* 73.

It is unnecessary to multiply authorities on so plain a proposition. The general principle can admit of no dispute at this day, and it must apply to decrees or judgments of the orphans' court equally with the judgments of other courts, unless there be some special exemption in favor of that tribunal. This exemption is set up and attempted to be maintained by the counsel of the defendants. They contend that the account is final and conclusive by the act relating to the settlement of accounts in the orphans' court, except in certain cases of fraud or mistake ; in which cases the party injured may apply to have the account opened and restated ; and that the resettlement must be by and in the orphans' court, and none other. This position cannot be maintained upon principle. It is founded on an erroneous view of the general power of this court, and the true construction of the act of the legislature. When the act declares the sentences and decrees of the orphans' court final and conclusive, it only places them on a footing with the judgments of other courts. It does not take away the general jurisdiction of the court of chancery. It certainly does not in positive terms, and it is not called for by necessary implication, even if such result could be produced by implication. So when the statute gave the orphans' court power to open its own decrees upon certain conditions, in cases of account, whereby important facilities were afforded to the correct administration of justice, it

did not intend to say, that the court of chancery should have no power to interfere upon its own acknowledged principles. Giving certain powers to the orphans' court, cannot divest this court of similar powers. Those who choose may still come here, where the conscience of the defendant may be tested, and where the means of relief are more ample and satisfactory.

This question is not a new one. It was raised and much discussed in the case of *Burtis* v. *Hopkins*, before referred to. Chancellor Williamson then, in a very learned and conclusive opinion, repudiated the doctrine now contended for, and decided that our statutes in regard to the settlement of accounts in the orphans' courts, did not at all interfere with or abridge the jurisdiction of this court over the same subject matter.

The following is an extract from the opinion delivered in that case :—" But it was argued that the legislature have, by positive enactment, declared that the sentence or decree of the orphans' court on the *final* settlement and *allowance* of the accounts of executors, &c. shall be conclusive upon all parties, and exonerate and discharge them from the demands of creditors, except in the cases there provided for. But this provision was only intended and designed to make the decrees of the orphans' court as conclusive as the judgments of other courts; and the general principle is, that the judgment of every court of competent jurisdiction, directly upon the matter, is conclusive in any other court : *Bull.* 243, 244. But fraud infects the judgment itself, and, in the language of lord Hardwicke, annuls the whole in the consideration of this court. Nor can the authority given to the orphans' court to correct their own sentences and decrees, where a party applying for a resettlement shall prove some fraud or mistake therein to the satisfaction of the said orphans' court, oust this court of jurisdiction. But it does most clearly prove, that the legislature had no intention to afford protection to fraud. This provision was evidently intended to give to those courts authority to correct their own decisions, where some estate not inventoried or accounted for, should afterwards be discovered, or where an allowance of some item had been fraudulently obtained, or some

mistake intervened in the settlement. And it is a very just and wise provision, as in many cases such frauds and mistakes can be detected and corrected in the court settling their accounts, with less expense and delay than must inevitably attend a suit in this court. But that authority inherent in the orphans' court, does by no means supersede or render unnecessary the power of this court to relieve against their decrees when fraudulently or collusively obtained. The courts of common law have authority to set aside their own judgments when obtained fraudulently, but recourse, nevertheless, is often necessarily had to a court of equity to relieve against their judgments, where a discovery may be had, and the whole transaction sifted to the bottom, through the oath of the fraudulent party, and where in many cases more effectual relief may be had. It has been observed by the author of the Commentaries, that in various kinds of fraud a court of equity assumes a concurrent jurisdiction, not only for the sake of a discovery, but for a more extensive and specific relief. And again, that from the same fruitful source, the compulsive discovery upon oath, the courts of equity have acquired a jurisdiction over almost all matters of fraud, all matters in the private knowledge of the party, which though concealed are binding in conscience, and all judgments at law obtained through such fraud or concealment; and this, not by impeaching or reversing the judgment itself, but by prohibiting the plaintiff from taking any advantage of a judgment obtained by suppressing the truth, and which, had the same facts appeared on the trial as are now discovered, he would never have obtained at all."

Upon the strength of this opinion, and the cases which have been cited, all founded upon the general law and practice of the court, I think there can be no doubt that this court has power to relieve against the decrees of the orphans' court, where there is fraud apparent on the face of them, or where they are fraudulently obtained.

It remains, then, to inquire, whether there be in this case such fraud as will call for the interference of this court.

The charge in the bill is, "that there is fraud and mistake

apparent upon the face of the said account, in that while the said accountants pretend to charge themselves as well with such parts of the estate of the said Priscilla Scott, deceased, as came to their hands, as with such parts thereof as came to the hands of the said Jonathan Scott, deceased, in his life time, they have in fact charged themselves only with the amount of the inventory and appraisement so as aforesaid made of the estate of the said Priscilla Scott, deceased, by the said Jonathan Scott, and the interest he received on the obligations set forth in the said inventory; allowing no interest whatsoever on the residue of the estate of the testatrix, from the time when the account ought to have been settled, to wit, within one year after the death of the said testatrix, up to the time of the said decree of the said orphans' court." The complainants therefore submit, that the said pretended settlement, showing such fraud and mistake, is no bar to their just claims.

It appears that the inventory was made in August, 1797, and amounted to three hundred and seventy-nine pounds eleven shillings and eleven and a half pence. It was all convertible into money. The vendue of the goods and chattels took place in September, 1797; and on comparing the vendue list with the inventory, there appears to have been no loss, but rather a gain. The debts were few and of small amount, and were speedily paid, and it is fair to suppose that the balance of the property was in hand to meet the exigencies of the estate. A portion of each legacy was paid to the several legatees as they came of age. The last two payments were made in 1825. The court have charged the accountants on the debit side of the account with the amount of the inventory, and with interest to the amount of eighty-four pounds nine shillings and seven pence—two hundred and twenty-five dollars and twenty-five cents; and after deducting the sums paid for debts and expenses, and also the payments made on the legacies, they decreed a balance in the hands of the administrators of one hundred and eighty-seven dollars and eighty-four cents. I am satisfied that this amount is much too small, taking the documents as a guide. I have made a calcu-

lation of the account, charging interest on the balance in hand at seven per cent up to 1824, and at six per cent from that time up to 1831, and deducting all the allowances on the credit side of the account, and according to that calculation there should be in the hands of the administrators about five hundred dollars more than is adjudged to be there by the decree of the orphans' court. This does not appear to be just or equitable. It would seem that even if the full amount of interest was not actually received by Jonathan Scott, it ought to be accounted for, on the principle that it might have been received with due and proper diligence.

It does not appear to be right; and yet I am unable to come to the conclusion, that this is such a fraud as will authorize this court to interfere and treat this decree as a nullity. I can discover no fraud in the procurement of this decree; nothing like a concealment or misrepresentation of facts or circumstances, whereby the accounting officer or the court could have been misled or deceived. Nothing appears here that did not appear before the orphans' court. That court were the proper and legal judges of the amount of interest with which the accountants were to be charged according to the circumstances of the case. They investigated the subject, and adjudged upon it. Their judgment may be erroneous; they may have thought proper to charge no interest, on the ground that none was received, or upon some other ground which cannot now be ascertained. This court is not, therefore, to conclude that it was occasioned by fraud or conceal-ment on the part of the administrators.

There are very many cases where accounts are settled in the orphans' court, in which it will appear upon inspection, that the full amount of interest which might be charged according to the face of the account, has not been charged. It would be a dangerous doctrine to establish, that in all such cases the decrees should be considered as nullities; or that, upon a bill filed, the deficiency of interest should be considered sufficient evidence of fraud in the decree. It is not enough that the orphans' court may have erred in judgment, as to a subject matter properly be-

31

fore them ; they must have been led into error by some fraudulent and unconsciencious act or omission of the party to be benefitted, or this court can take no cognizance of it.

The case of *Richmond et ux.* v. *Tayleur*, 1 *P. Wms.* 734, was where a bill was filed by husband and wife to set aside a former decree obtained against the wife while an infant, by fraud and collusion. Lord Macclesfield said, if any fraud or surprize upon the court had been proved, he would have set aside the decree ; but on the contrary, it appeared that the court was fairly and fully apprized of the case, of the articles, and of the point in question, and had thought fit to make a decree, which, as it might be a just one, therefore he would not set it aside. In another report of the same case, the court is reported as saying, that inasmuch as the decree was not fraudulent, though in every respect not so equitable, the court would not set it aside : 1 *Will. Rep.* 734. From this it would appear, that although a judgment may not be entirely just or equitable, yet unless it be infected with fraud, the consideration or propriety of the judgment cannot be inquired into ; and such is the opinion of the court in *French et al.* v. *Shotwell*, 6 *John. Chan. R.* 235.

This is the true doctrine of the court. It will not undertake to review the sentences or judgments of other tribunals, to ascertain whether they have erred in the exercise of their judicial power or discretion in matters over which they had complete jurisdiction. This is not the province of a court of equity. It sits not in judgment on the lawful acts of other tribunals, however mistaken those acts may be. It seeks to detect and relieve against fraud in the procurement of such acts. It deals with the consciences of parties, and not with the opinions of courts.

It was wisely said by lord Redesdale, in *Bateman* v. *Willoe*, 1 *Scho. and Lef.* 204, that if a matter has already been investigated in a court of justice, according to the ordinary and common rules of investigation, a court of equity cannot take on itself to enter on it again. And in the same case, the chancellor says, " there may be cases cognizable at law and also in equity, and of which cognizance cannot be effectually taken at law, and

therefore equity does sometimes interfere; as in cases of compli-cated accounts, where the party has not made defence, because it was impossible for him to do it effectually at law; so where a verdict has been obtained by fraud, or where a party has possess-ed himself improperly of something, by means of which he has an *unconscientious* advantage at law, which equity will either put out of the way, or restrain him from using; but without circumstances of that kind, I do not know that equity ever does interfere to grant a trial of a matter which has already been dis-cussed in a court of law, a matter capable of being discussed there, and over which the court of law had full jurisdiction :"— pages 205, 206.

Under this view of the case, I am clearly of opinion that the complainants have failed in establishing this charge of fraud, which is the only one that could avail them, in avoiding the decree of the orphans' court.

There was another charge set up in the argument. The com-plainants contended that the administrators, in their capacity of administrators de bonis non of Priscilla Scott, had settled the whole estate of Priscilla Scott, as well that part which had come to the hands of Jonathan Scott the executor, as that which had come to their own hands as administrators de bonis non; that this was calculated to deceive parties interested, and ought not to be held conclusive.

I consider this quite too technical a matter to be the foundation for a charge of fraud, even if the complainants were right in their view. I apprehend, however, that the settlement, as made by the defendants, in their character of administrators de bonis non of Priscilla Scott, was properly made. As administrators of Jonathan Scott, they did not represent Priscilla Scott. When Jonathan Scott, the executor, died intestate, Priscilla Scott was also intestate. The right to settle or meddle with her estate was not in the administrators of Jonathan Scott, as such. It belong-ed to the law to appoint a suitable person to take charge of that estate, for the benefit of those entitled. The legatees could not call on the administrators of Jonathan Scott for payment of the

money due them under the will.  Such administrators must account with an administrator de bonis non, and the administrator de bonis non must account with the legatees—for he only represents the estate of the testator.  It is the duty of the administrator de bonis non to collect the whole estate, whether outstanding or in the hands of those who represent the deceased executor; and settlement by the administrator de bonis non, must necessarily be of the whole estate unadministered, and must be final.  It appears to me, then, that there was nothing irregular or erroneous in the mode of settlement.

If there be any irregularity, it is rather on the part of the complainants, who have proceeded against the defendants as administrators and representatives of Jonathan Scott, and not as representatives of Priscilla Scott.  As they have answered in both characters, without exception, and admitted themselves liable to a certain amount; have contested the charge of fraud; and as the matter has been fully investigated, and complete justice may be done, it would be a useless expense to turn the parties round at this stage of the case.  The proceedings would be more regular if the process were amended so as to reach the defendants in both characters.

The complainants are entitled to a distribution of the amount in the hands of the administrators, according to their respective rights, with interest from the date of the decree of the orphans' court, and they are entitled to their costs out of the estate.

The bill must be dismissed as against the heirs at law of Jonathan Scott, deceased; and as there is no allegation in the bill of the personal assets of Jonathan Scott being insufficient for the payment of claims against his estate, and the sum in dispute was at most but small, it must be dismissed as to them with costs.

Decree accordingly.