MARY E. KIRKHUFF, complainant and appellant,

*v.*

GEORGE KERR et al., defendants and respondents.

[Filed March 6th, 1899.]

When legal process has been fraudulently abused and a title to property has been thereby obtained which the court of law cannot restore, a court of equity will intervene and afford such relief as may be necessary to undo the wrong and secure a legitimate use of the process.

---

On appeal from a decree advised by Vice-Chancellor Reed, who delivered the following opinion :

I am convinced that the attachment proceedings were instituted in New Jersey surreptitiously and for the purpose of getting a judgment against Mrs. Kirkhuff without her knowledge and therefore without a contest. While the action in the Philadelphia court was still pending and while the validity of this very account was in issue, the proceedings in New Jersey were

commenced and consummated. No notice, I am satisfied, was ever sent by the attorney of Mr. Kerr to Mrs. Kirkhuff of the existence of the attachment suit. The suit was initiated with no purpose of extending any knowledge of its existence to her. Dr. Kerr knew, when he filed his affidavit to secure his writ of attachment, that his claim was contested and that it then was actually in suit in another jurisdiction.

As to a part of the claim, namely, the $150, the evidence is strongly in the direction that it never had an existence; that the deed of the property was made for the repayment of the sum of $100 which his wife had borrowed, and if it was a claim, it was not his claim, but was a claim due to his wife.

In respect to the other matters set up in the affidavit, they are all such as should be settled only by trial.

The conversation between the doctor and Mr. Hood, and particularly the letter of July 5th to Dr. Kirkhuff, were calculated, and, I think, designed to lull Dr. Kirkhuff into a false belief that the set-off had been abandoned. But assuming all this, the difficulty I see in affording the complainant any relief is that she has not exercised that degree of vigilance which entitles her to come into this court and successfully ask its aid. The sale of the complainant's land under the judgment in attachment occurred, as already stated, on June 17th, 1886. The bill, as already stated, was not filed until September 26th, 1893. Over seven years elapsed before any step was taken to undo the work of Dr. Kerr in causing the sale of her property. The excuse offered by the complainant is that she was not aware of the fact that the property had been sold away from her until the year 1892. Of course, if this be a fact, then she is not in laches, but I am unable to resist the conclusion that she is mistaken in this position. She says that she received information of the sale from Mr. Cowl, a minister, who had visited Lavallette. Mr. Cowl visited Lavallette, according to the testimony of Mrs. Fleck, in the summer of 1887, as the guest of her father and mother. Mrs. Fleck says that she visited Lavallette every summer, and she never saw Mr. Cowl there at any other time than the one mentioned. If it be true that this was Mr. Cowl's

only visit, it was quite unlikely that he did not convey to the complainant, until five years later, the information that he had received upon that visit. But the most persuasive feature in the transaction is that Mrs. Kirkhuff seems never to have made any inquiry about the property after 1888 until about the time she filed her bill. She never visited Lavallette during that interval. She had already sued Dr. Kerr to recover the $200. She could not, therefore, have depended upon his friendship to look after the property without further request, and without any accounting during these seven years. Personally she paid no attention whatever to the property. Neither directly nor indirectly does she seem ever to have inquired whether it was rented, and, if so, who was receiving the rents. Whether it was standing empty, or was out of repair, whether the taxes were paid, she seems never to have inquired. This was certainly a remarkable course of conduct, if she still supposed she owned the property. It is only consistent with the fact that she had been informed that it had been sold away from her. If she was informed of that fact in 1887, and I think she was, then her delay in filing her bill exhibited such laches as to preclude her invoking the equitable assistance of this court at this late day. In the meantime, in this as in most instances of such delay, the property has been sold, a witness has died, and it is almost impossible to place the parties *in statu quo.*

I will advise a decree for the defendants, but without costs.

*Mr. Isaac W. Carmichael,* for the appellant.

*Mr. Samuel A. Atkinson,* for the respondents.

The opinion of the court was delivered by

Dixon, J.

We think the circumstances of this case show quite clearly that the defendant Kerr used the attachment proceedings to effectuate a purpose which was in violation of the duty owed by him to the complainant.

40

Before instituting those proceedings he had acted for the complainant in taking charge of her real estate at Lavallette, and without notifying her distinctly that he gave up that trust, he issued the writ of attachment upon a claim which he then had in litigation with her in Pennsylvania, prosecuted it to judgment and by virtue thereof caused the complainant's title to that real estate to be transferred to his own agent and trustee, Deibert, the other defendant. This he did surreptitiously, not only omitting to inform·the complainant of the pendency of his suit, but designedly concealing the matter when honesty and candor dictated that he should communicate it to her. Evidently his object was, not that he might collect what he considered due him, but that he might through her ignorance obtain her property for himself at whatever sacrifice of her interest he could bring about.

This was a fraudulent abuse of legal process against which a court of equity may properly give relief, the court of law being unable to reach the title thereby acquired. *Tomkins* v. *Tomkins, 3 Stock. 512; Herbert* v. *Herbert, 4 Dick. Ch. Rep. 565; 3 Pom. Eq. §§ 1364, 1365.*

We do not think the complainant's delay in filing the bill is such as to disentitle her to equitable aid. Being led by Kerr's settlement of the suit pending in the Pennsylvaia court, to suppose that he had abandoned the claim there presented as a set-off, and having no reason to suspect that he could make any attack upon her property at Lavallette, no laches could be imputed to her in his favor, because of any inattention she might find it convenient to permit with respect to that estate. The evidence does not satisfy us that she had notice of his hostile proceedings until the year 1892, and in the interval between that and the filing of the bill, September, 1893, there was not sufficient lapse of time or change of conditions to operate as a bar.

Our conclusion is that Kerr and Deibert should convey to the complainant so much of said Lavallette property as is still held by either of them, and that Kerr should account to her for the fair value of so much as either of them has conveyed, unless within thirty days after notice of the decree Kerr files in the Ocean circuit, a written consent that the judgment in attachment

Cumberland Lumber Co. v. Clinton Hill Lumber Mfg. Co.

be opened and the complainant let in to defend; if he so consents, then the same accounting should be ordered, crediting Kerr therein with the amount of the judgment, if any, which he may recover in the attachment suit, and upon payment to him of the balance, if any, found due to him on the accounting, the same conveyance should be decreed. In the meantime the defendants should be enjoined from conveying and encumbering the property.

The decree dismissing the bill should be reversed and a decree should be entered as aforesaid.

*For reversal*—THE CHIEF-JUSTICE, DEPUE, VAN SYCKEL, DIXON, GARRISON, LIPPINCOTT, GUMMERE, LUDLOW, COLLINS, NIXON, HENDRICKSON, VREDENBURGH—12.

*For affirmance*—None.