MARY T. TRUITT et al.

v.

ALBERT H. DARNELL et al.

[Filed July 29th, 1903.]

Attorneys-at-law conceived that their non-resident clients were indebted to them for alleged services. The attorneys did not state to their clients the nature of the services and the amount of fees demanded, nor did they serve their clients with a copy of a taxed bill of such fees. The clients did not know that any such bill was claimed, and deny that they owe anything to their attorneys. The latter issued a foreign attachment against their clients for the alleged debt, but gave their clients no notice of that fact. The clients had no knowledge of the attachment suit, and therefore made no defence. Judgment on the attachment was entered against the clients in favor of the attorneys for the sum claimed by them. After the judgment was entered, the clients were, for the first time, informed by their attorneys that suit had been brought and judgment entered against them. The clients applied to the law court in which judgment had been entered, and were refused relief on the ground that the court had no power to grant it. The attorneys were about to sell under the attachment judgment, the property which their clients had put in their charge.—*Held*, (1) the attorneys were obliged by section 12 of the Practice act (*Gen. Stat. p. 2535*) to serve upon their clients a taxed bill of their fees, &c., before suit; (2) it was their duty as attorneys to have made known to their clients that the attachment was sued out and pending; (3) the omission of the attorneys to demand their fee by a bill of items, &c., before suit, and to notify their clients of the attachment, entitles the clients to the aid of this court to enjoin the sale or other proceedings under the attachment judgment until they be let in to defend that suit on its merits.

On bill and affidavits, and answering affidavits.

The bill in this case is filed by Mary T. Truitt and others, owners of a hotel in Atlantic City, called the "Hotel De Ville," and of the furniture, goods and chattels therein contained, and seeks to restrain the defendant Albert H. Darnell from selling that property under a judgment in attachment entered by him

in Atlantic county circuit court against the complainants for fees alleged to be due him from them for services as their attorney-at-law.

The complainants allege that about June 1st, 1901, they were the holders of a mortgage against the hotel above mentioned, and also of a mortgage upon the goods and chattels contained in it; that one of the complainants employed one John C. Sims and the defendant Albert H. Darnell, who were then partners, as attorneys-at-law, to collect the amount due on the real estate mortgage; that afterwards the other complainants, who had originally employed another attorney, accepted Sims & Darnell to act for them in conjunction with Mr. Gangewer, the complainants' solicitor in the present cause. Sims & Darnell, acting for the complainants, filed a bill to foreclose the chattel mortgage, and obtained a sale of the chattels for $1,500 or thereabouts, and also filed an answer to a bill filed by one Phillips, foreclosing a previous mortgage on the real estate, which answer set up the mortgage of the complainants as a lien, &c. The amount due to the complainants on their real estate mortgage was in the neighborhood of $28,000, which was subject to the previous lien of Mr. Phillips, and also to a mortgage for $10,000 held by the estate of one Myers.

The complainants, Truitt and others, bought in the hotel under Phillips' foreclosure, and found much difficulty in raising the money necessary to meet the prior obligations, but finally did so, and claim to have paid over to their attorneys, Sims & Darnell, for disbursement, various sums, at different times, amounting to about $12,000. They allege that they endeavored to obtain from Sims & Darnell a statement of their disbursements of these moneys, and finally, about July 15th, 1902, received two statements, copies of which are annexed to the bill. The last of them concludes with this item: "Bal. due Sims and Darnell $401.29, with fee to be added." They contain no statement of the amount of the "fee to be added," nor do they disclose for what services it would be charged.

The complainants' affidavits deny that the services named in the statements were in fact rendered by Messrs. Sims & Darnell; deny that the claimed $401.29 was owing to them; allege

Truitt *v.* Darnell.

that no disclosure has been made of what amount was claimed as "fee to be added," or for what services, and declare that the complainants are not indebted to Sims & Darnell in any sum. The necessary inference from these affidavits is that when the accounts between the parties are properly stated Sims & Darnell will be found indebted to the complainants.

No settlement of the accounts between the parties was had, nor was there any breach of their pleasant relations. The complainants had no reason to believe that Messrs. Sims & Darnell contemplated any hostile action. On August 26th, 1902, Messrs. Sims & Darnell issued against the complainants a foreign attachment out of Atlantic circuit court, upon affidavit filed, claiming that the complainants (defendants in the attachment) were indebted to them in the sum of $2,602.48 for services rendered by the affiants to the complainants. Messrs. Sims & Darnell caused the attachment to be levied upon the Hotel De Ville, the property of their clients, the complainants. The writ was returned August 28th, 1902, and an auditor appointed before whom the defendant Albert H. Darnell filed as proof of the claim of Sims & Darnell the following affidavit:

"State of New Jersey, } ss.
"County of Atlantic. }

"Albert H. Darnell, being duly sworn according to law, on his oath says that he is of the late firm of Sims & Darnell, lately composed of John C. Sims and deponent, said John C. Sims having departed this life; that there is due said late firm from the defendants the sum of two thousand six hundred and seven dollars and thirty-seven cents, which sum is made up as follows:

"Commission on loan of $40,000.......................... $800 00
"Fee for conducting foreclosure suit, Mary T. Truitt *v.* May
    W. Truitt et al., and defending foreclosure suit, Arvine
    H. Phillips *v.* May W. Truitt et al., and for services rendered in general management of defendants property in
    Atlantic City, from May 13th, 1901, to October 15th,
    1902 ............................................... 2,200 00
                                                        _____
                                                        $3,000 00
                        "*Cr.*
"By cash ............................................... $392 63
                                                        _____
                                                        $2,607 37
                                        "Albert H. Darnell.

Truitt *v.* Darnell.

"Sworn and subscribed to this thirteenth day of January, A. D. 1903, before me.

"HARRY I. RAUP,
"*Notary Public.*"

On this proof the auditor reported that there was due to Darnell, surviving plaintiff in the attachment suit, the sum of $2,607.37. Judgment was entered upon the auditor's report on February 2d, 1903, and Mr. Darnell, the surviving plaintiff in the attachment suit, under it advertised for sale, not only the Hotel De Ville, which was seized under the attachment, but also the furniture contained therein, which does not appear to have been included in the original attachment levy, and was about to dispose of both by public sale.

The complainants' affidavits show that no claim was ever made to them by their attorneys, Messrs. Sims & Darnell, that they owed them $2,607.37, or any such sum, nor has any statement ever been made to them showing for what services such a fee was claimed. The issuing of the attachment which Sims & Darnell took out against their clients (the complainants in this suit) was not in any way disclosed to the latter. During the period of time that the attachment was pending the complainants, and those who acted for them in their business with Sims & Darnell, frequently met Sims or Darnell, but nothing was said by either as to fees due or attachment therefor pending. After judgment had been finally entered on the attachment, the attorney of Mr. Darnell, the surviving plaintiff in the attachment suit, made known to the complainants the fact that, on an attachment suit, a judgment had been obtained against them, and invited them to pay it.

The complainants then applied to the circuit court judge for relief, asking that the attachment judgment be opened, and they be let in to contest with their lawyers the justice of their claims. The circuit court judge refused to let them in to defend the attachment suit, on the ground that the circuit court had full judicial power only over common law procedures, and that it had no authority to control judgments entered under special statutory proceedings, where the statutory requirements

Truitt *v.* Darnell.

had been observed. The complainants then filed their bill of complaint in this cause, and now, by their bill and an amendment to its prayer, ask a preliminary injunction restraining Mr. Darnell from sale or further proceedings, under the attachment judgment, until he shall open the same and let the complainants in to defend that suit.

An order was allowed that the defendant Darnell show cause why he should not be restrained from further prosecuting the attachment suit and the auditor from selling the complainants' hotel, &c., under the attachment. On the coming in of the order, the defendant Darnell filed no answer, but submitted his own affidavit and copies of powers of attorney and letters, as his showing of cause against the allowance of a preliminary injunction restraining him from selling the complainants' hotel and its equipment.

The defendant's affidavit does not contradict the complainants' claim, that the only bill ever rendered to the complainant for services was that which claimed $401.29 and "fee to be added." Nor does he show that, at or before the time when the suit in attachment was brought for $2,602.48, the complainants had ever been asked to pay that sum, or that they, in any manner, knew that Messrs. Sims & Darnell demanded any such fee. He states that "no specific sum for services, aside from commission for negotiating the loans, was ever mentioned."

He does not deny that the complainants were ignorant of all the proceedings in attachment until after judgment had been entered, and they thus precluded from making any defence.

Mr. Darnell declares that the steps in the attachment proceeding were regularly taken; that the

"firm of Sims & Darnell were retained by complainants to represent them in a number of matters in relation to the premises described in their bill, and that said services continued over a period from about May first, 1901, to August first, 1902,"

and that "at the time of issuing the said attachment said firm [Sims & Darnell] had no unsettled matters with complainants

15

other than the bill of said firm." The rest of the defendant's affidavit is a recital of services rendered to the complainants, which he claims entitle him to the $2,607.37 for which the attachment judgment was entered.

*Mr. Allen H. Gangewer,* for the complainants.

*Mr. Clarence L. Cole,* for the defendant.

GREY, V. C.

The defendant is the surviving member of the firm of Sims & Darnell, attorneys-at-law, residing in Atlantic City. The complainants are four women living in Philadelphia. Sims & Darnell had acted as their attorneys in various suits and matters at law.

The complainants assert that Sims & Darnell were their employed attorneys at the very time they began the attachment suit, and continued to be while they were, unknown to the complainants, pressing it to judgment. The defendant Darnell declares that when the writ was issued there were no unsettled matters between them, other than the unpaid bill.

As the amount of the alleged debt was never agreed upon between the parties, and was not, in the nature of the case, ascertainable by mere computation, it is not quite 'clear that the plaintiffs in attachment might lawfully, by their own *ex parte* oath, fix the amount of their compensation with that certainty which an attachment proceeding requires. This case does not, in this court, raise this question.

The affidavit of Mr. Darnell filed before the auditor (above recited in full) declares that there is due the firm of Sims & Darnell from the complainants in this suit, "for services rendered in the general management of defendants' property in Atlantic City from May 13th, 1901, to October 15th, 1902," &c. The attachment was issued on August 26th, 1902.

Counsel for the defendant strenuously insists that this date—October 15th, *1902*—ought to have been October 15th, *1901;*

that, in fact, the services of Mr. Darnell to the complainants ended in October of 1901, and not in 1902. The defendant has been served with a copy of his affidavit containing the statement that his services ended October 15th, 1902. If he denies the accuracy of the complainants' copy, he should have produced the original or a sworn copy of it. He cannot be permitted to contradict the proof that it presents, by a mere parol statement contradicting it.

Upon examining all the proofs I am satisfied, not only that the copy of Mr. Darnell's affidavit annexed to the bill of complaint is correct, but that he did, in fact, continue to be in the service of the complainants, as their attorney, at the very time he issued the attachment against them, and afterwards, probably up to and beyond October 15th, 1902.

The affidavits submitted by the complainants so declare. The copies of the powers of attorney, letters, &c., annexed to the defendant's affidavits in this cause, indicate the same thing. The employment of the defendant consisted, as appears by the defendant's own statement, not only of the conduct and defence of suits, but also of various matters relating to the property of the complainants. Mr. Darnell's affidavit and accompanying papers show, that he claims to have negotiated loans, rented the hotel, spent money in repairing it for the tenant, as services to the complainants.

To enable Sims & Darnell to conduct this business, they took from the complainants a power of attorney, authorizing that firm

"for the space of one year from the date hereof, for us and in our names, place and stead, to rent and receive rents and execute lease or leases, to keep in repair and pay the necessary expenses thereon out of the revenues derived therefrom, and also from said revenue to pay all interest on mortgages, taxes, insurance, water rents, sewerage rents and other charges of every description."

This paper is dated April 23d, 1902. It is produced by the defendant himself, and shows that Sims & Darnell accepted an appointment as attorneys for the complainants for the period of one year from April 23d, 1902. There is no pretence of proof

that this power of attorney was ever revoked or surrendered. The attachment was issued on August 26th, 1902, during the continuance of the employment of Sims & Darnell under this power of attorney.

Other copies annexed to Mr. Darnell's affidavit on file show that he was in active correspondence with the complainants, accepting authority from them to act for them as their attorney, in various matters, by letters, the last of which is dated June 21st, 1902.

When it is considered that the nature of the business carried on by Sims & Darnell for the complainants—renting the property, receiving the rents, paying them out to keep the hotel and premises in repair, paying interest on mortgages, taxes, &c.— was continuous in its character; that it was formally undertaken on April 23d, 1902, for one year, and never revoked or surrendered, it is, I think, established that, when the attachment was issued against the complainants by Sims & Darnell, the latter were yet the employed attorneys of the complainants.

The facts stated in the defendant's affidavit, filed with the auditor, seem to indicate that the defendant, who issued the attachment on August 26th, 1902, went on rendering services in the general management of the complainants' property in Atlantic City until October 15th, 1902, and that he recovered judgment, not only for services rendered up to the time of the attachment, but for those rendered afterwards, up to October 15th, 1902, for the sum sworn to before the auditor, is in excess of the original affidavit in attachment.

The Practice act (*Gen. Stat. p. 2535 § 12*) provides that no attorney shall commence or maintain any suit against his client for the recovery of any fees, charges or disbursements until after he shall have delivered to his client a copy of the taxed bill of such fees, costs or disbursements. In *Strong & Sons* v. *Mundy,* *7 Dick. Ch. Rep. 835,* the court of appeals said this requirement cannot be limited to the charges taxed in the bill usually known as costs of the suit, mentioned in the previous sections; and (on *p. 836*) intimates that, before suit brought by a lawyer against his client for charges for general services, such as are the sub-

ject-matter of this attachment suit, the bill of charges, &c., must, under section 12, be settled by taxation before service. What mode of procedure shall be observed in taxing such a bill, is not indicated by the court's opinion.

In this case there was no taxation of the bill, no service of any copy, and a suit in attachment was begun by the attorneys before all the services for which the fees were claimed, had even been rendered to their clients. The complainants have been deprived of their right to defend the attachment suit by the action of their attorneys in suppressing the fact, which they were bound to disclose, that they had a claim for these fees and were suing for them.

Irrespective of the obligations imposed by the statute upon a lawyer who claims fees from his client, to serve copy of bill before suit, I think, upon general principles, in cases where compensation to be paid for services has not been fixed by agreement between the parties, the client has an equity to be informed of the amount claimed by the attorney before suit is brought. The client may be willing to pay the amount claimed by the attorney without suit. The nature of the relation of attorney and client is such that the attorney is bound to disclose to his client the amount of his charge, so that the latter may not be subjected to costs of suit if he be willing to pay the sum demanded. No certainly efficient tender of payment can be made until there is either an agreement as to the amount of the sum due, or an acceptance by the client, as correct, of the sum claimed by the attorney.

While the relation of attorney and client continues, and no circumstance has occurred which has put the parties in hostility to each other, so that the client no longer has a right to expect his attorney to care for his interests, the attorney is bound to inform his client of every matter known to the attorney which may threaten his clients' interests, even if the endangering incident is the attorney's own claim for fees, which certainly is dangerous if enforced by attachment against non-resident clients.

In the present case no such information was given. The attorney prosecuted a suit against his clients which he knew

Truitt *v.* Darnell.

carried no personal notice to them. The basis of the suit was a claim for an amount of fees which the attorney knew his clients had not been informed, was demanded of them. The attorney prosecuted this suit to judgment without giving his clients any information that it was pending, and thus deprived them of all opportunity to defend it. When they apply to the law court for relief they are informed that it has no power to aid them. Under this judgment for fees which the clients insist are not due, and which both parties admit the attorney never asked his clients to pay until after judgment had been entered against them, the attorney is about to sell the very hotel property which his clients had committed to his charge.

The defendants' counsel insists that the complainants have their remedy at law under the Attachment act (*P. L. of 1901 p. 169 § 27*), by suit on the refunding bond to be taken by the auditor. This assumes that the complainants shall submit to the forced sale of their hotel under the attachment, which would plainly inflict irreparable loss upon them, and rely upon a lawsuit for their remedy. It is the function of this court to prevent such loss where an equitable right is exhibited which justifies its interference.

The defendant further contends that under the rulings in *Tomkins* v. *Tomkins, 3 Stock. 515,* and *Herbert* v. *Herbert, 4 Dick. Ch. Rep. 70; S. C. on appeal, 4 Dick. Ch. Rep. 566,* where the proceedings in an attachment suit are regular in all formal respects, the court of chancery cannot intervene merely on the ground that the claim which has passed to judgment is not in point of fact justly due, or is of a contestable character. He insists that in the *Herbert Case* the court of appeals expressly declared that "the only ground upon which a defendant in attachment can have any relief in this court is that the plaintiff fraudulently used and managed the attachment suit for the enforcement of a claim which he knew had no legal efficacy." The defendant insists that under these rulings, if any sum be due to a plaintiff in attachment, no matter how small it may be, this court can afford no relief, although the

Truitt *v.* Darnell.

plaintiff may have obtained judgment for much more than is in fact owing to him.

The fraudulent conduct of any suit by a plaintiff in such manner that the defendant is prevented from making his defence at law, raises an equity which justifies the interference of this court to secure to the defendant the opportunity to be heard, of which he has been deprived by the fraud of the plaintiff. Every man is entitled to present his defence to a suit brought against him. Whether this defence be good or bad is for the court in which the suit is brought, to determine after hearing it. The right to be heard in the regular order of procedure is not dependent upon the meritorious character of the defence. Nor is it limited to those cases in which the defendant owes nothing to the plaintiff. A defendant has the same right to defend himself against an exorbitant increase of a bill as against a totally false claim. He has the right to the same equitable remedies in both cases.

A party has his remedy in equity against a fraud which has cheated him of his right to defend a lawsuit, as he has against a fraud which has actually cheated him of his property. This fraud may consist just as effectually of a suppression of the truth which the plaintiff was bound to disclose, as of a suggestion of a falsehood with a purpose to mislead.

I do not understand the court of appeals' judgment to deny these positions. Regarding its declaration in the *Herbert Case,* it may, I think, be fairly said that every plaintiff in an *ex parte* attachment who passes his claim to judgment for an amount which is not in point of fact justly due, in the sense that it is not owed to him by the defendant in attachment, has "fraudulently used and managed his attachment for the enforcement of a claim which he knew had no legal efficacy."

No refined distinctions are needed, however, in the present case. The plaintiffs in the attachment were, at the time they brought their suit, the attorneys of the defendants in that attachment suit. No such relation appeared in the *Herbert Case.* The attorneys were, both by the statute and upon general principles of law, bound to notify their clients of the specific sum de-

manded for their fees before they began suit against them. The attorneys were bound to have notified their clients of the beginning and pendency of the attachment suit which was levied upon the very hotel property of their clients which was in the attorneys' charge, the rents of which they were then, by power of attorney, authorized to collect.

The omission of the defendant in this suit to perform this duty to the clients (the complainants in this suit), which prevented a defence in the attachment suit, entitles the complainants to the aid of this court under any proper construction of the case of *Herbert* v. *Herbert*.

I will advise an order that upon the complainants' filing a bond securing the defendant, the benefit of his judgment in attachment, if this suit shall fail, and securing also the payment of any final judgment in that attachment, a preliminary injunction shall issue restraining the defendant from selling the Hotel De Ville and its equipment and from collecting any rents or profits thereof, and from proceeding on the attachment judgment unless the defendant shall consent that the judgment be opened, and the complainants be let in to defend said attachment suit on the merits of the case.