This bill is to annul a Martin act tax deed for four and sixty-two hundredths acres of vacant land in the Newark meadows, and for a partition of the same. The meadows were first laid out for assessment purposes in 1888, and on the assessment map the land in question is designated as block 1393, lot 3; block 1394, lot 4; block 1395, lot 3, and block 1396, lot 6. It was first assessed for taxes in 1893 against Samuel Whitaker estate, and so up to 1908, when it was sold for the accumulated taxes, $44.25, under the Martin act, to Florence E. Cahill, who, after proceedings against unknown owners, as provided by the act, obtained a deed from the comptroller of Newark upon an order of the circuit court of Essex county, and then conveyed to Lindsley. The blocks and lots were assessed in the name of Samuel Whitaker estate, because the adjoining surrounding lands were located in ownership of record and in the chain of title to a six-acre tract adjoining on the west. That tract is bound on the east by meadows belonging to Edward Baldwin and Samuel Whitaker. The Baldwin lot was held in separate ownership. The complainant claims that Samuel Whitaker was seized of the lands at the time of his death in 1818, but there is no paper title in him of record, nor is it shown that he ever had possession, or that anyone claiming under him has since been in possession. The chain of title from Samuel Whitaker to the complainant and defendants in partition is undisputed. In 1921 the complainant bought from some of the descendants of Samuel Whitaker more than two-thirds undivided interest in the land and brought this suit for partition against the remaining descendants. The outstanding tax title of the defendant Lindsley stands in the way of a partition, and to annul it it is *Page 487 
charged that the order of the circuit court directing the comptroller of Newark to execute and deliver a deed to Florence E. Cahill was procured by fraud imposed upon the court by John Francis Cahill, her husband, attorney for her and Lindsley.
Equity will redress wrong perpetrated by fraudulent proceedings at law. Boulton v. Scott, 3 N.J. Eq. 231; Tomkins v.Tomkins, 11 N.J. Eq. 512; Kirkhuff v. Kerr, 57 N.J. Eq. 623;Truitt v. Darnell, 65 N.J. Eq. 221.
It is contended that the complainant has no such title in the land as to entitle him to a partition, and that, therefore, he is not injured, and is not entitled to relief, even though the deed was fraudulently procured, the argument being that partition cannot be had except the prima facie title be such as would sustain an action in ejectment, and that complainant does not possess such title. That, generally, is the test, but in a case where the possessory right of the complainant was somewhat similar to that in this case, partition was allowed. Grassman
v. Badgley, 90 N.J. Eq. 203. And in Wild v. Cahill,95 N.J. Law 557, an order like the one here under attack was set aside on certiorari for irregularity in the proceedings where the plaintiff's title was no stronger than this complainant's. The court held that the assessment of the land, in the name of an owner from whose descendants the plaintiff in certiorari
obtained title, justified the presumption of ownership. Whitaker's descendants had prima facie the right to redeem. The assessment of the land to Samuel Whitaker estate establishes that right against the city of Newark and Lindsley, who holds under the city. The defendant Lindsley is not in possession, and whether the complainant will eventually succeed in procuring a partition (the tax title being out of the way), is an issuable matter between him and the defendants in partition, in which the defendant Lindsley is not concerned. The question Lindsley is called upon to answer is whether his title was fraudulently procured.
John Francis Cahill bought the tax title in his wife's name and proceeded to perfect the title for Lindsley. In *Page 488 
his petition to the circuit court, signed and sworn to by his wife, he stated that he had examined the county records and inquired on the premises, and had make every inquiry that experience would suggest, and that he had failed to find any clue as to the owner of the property, and "that the person or persons having an interest in the land herein described are unknown to her and cannot be ascertained after due inquiry." The matter was referred to a commissioner for proof. Before the commissioner Cahill testified that he found on the tax record that the property was supposed to be owned by one Samuel Whitaker; that he was "unable to acquire any information whatsoever as to the owner or owners of the land;" that that he had not looked for the name of Samuel Whitaker or his heirs or descendants in the Newark directory, because "I have no means of ascertaining where the reputed owner, Samuel Whitaker, lived, because no deed is on record giving his address. I cannot learn from any record in the register's office, county clerk's office, surrogate's office, city hall or elsewhere of any heirs or descendants of Samuel Whitaker, the reputed owner; therefore, not knowing their names or their whereabouts, I could make no search in any directory or directories of the county of Essex." He was directed by the circuit judge to make examination of the Newark City Directory to ascertain if it contained the name of Samuel Whitaker, and in a supplemental affidavit he testified that he had made such examination of the Newark directory for the year 1908, "and that he does not find therein set forth the name of Samuel Whitaker aforesaid."
At the hearing Cahill admitted that he knew Samuel Whitaker died in 1818, and that his son Elisha lived in the homestead, 205 Washington street, Newark, and that the son's name and address appeared in the first city directory, in 1835, and thereafter until 1870, and that his son Samuel E. Whitaker lived there, and that his name and address was in the directory from 1854 to 1908, and that Elisha's daughter, Mary Whitaker, lived there until 1911. The only known Samuel Whitaker, who died in 1818, was the progenitor *Page 489 
of the complainant's grantors and of the defendants in partition, and Cahill knew of him and his kin and was familiar with the history of his family; he admitted that this Samuel Whitaker was the reputed owner of the meadow land in question, and he knew of his descendants and their whereabouts; if not all of them and their addresses, he knew where to obtain the information. It was also apparent to him that the assessment was laid against Samuel Whitaker's estate, because of the statement in the title deeds to the adjoining tract that it was bound by the meadow of Samuel Whitaker, and that the Samuel Whitaker, the forbear of the complainant's grantors and the defendants in partition, he whose will of 1818 was of record, was the only known Samuel Whitaker at that time in Newark. I think there can be no confusion as to his identity, and I am convinced that Cahill had no doubt of it.
The notice to redeem and the order to show cause, upon which the order for the deed was made, was addressed to "Samuel Whitaker, his heirs, executors, administrators, mortgagees, assignees and legal representatives, as well as to the unknown owner or owners of the land." The pressing inquiry before the court was not who were the unknown owners of the land, but who was this Samuel Whitaker and his heirs, c., to whom the land was assessed. And now, when it is considered that Cahill knew of the Samuel Whitaker whom he regarded as the reputed owner, and that his descendants were known to him, and that he suppressed this information, easing his conscience because he was not sure that the reputed owner was the actual owner, the deception perpetrated on the court is palpable. And more, when it appeared by his deposition that Cahill had not examined the city directory for possible heirs bearing the ancestor's name, and was directed by the circuit judge to do so, he reported in an affidavit that he found no "Samuel Whitaker" in the directory for the year 1908. He admits, however, that he found the name of Samuel E. Whitaker, his grandson, which for more than fifty years had been recorded under the same address. His explanation is that he was directed to look for *Page 490 
plain Samuel. Surely not for a man who had died nearly a century before. His explanation is as shallow and cunning as his affidavit is false.
Cahill professes that he called on Samuel E. Whitaker, the grandson, and made inquiry as to his grandfather's ownership, and concluded, from what he said, that he was not the man to whom the lands were accredited in the assessment. I have no faith in his statement. Samuel E. Whitaker is dead.
I am content that the order for the deed would not have been made had Cahill informed the court of his knowledge of Samuel Whitaker of 1818, and of his descendants whose addresses he knew, and that Samuel Whitaker's descendants would have been permitted to redeem had the court truthfully informed. The deed will be set aside.