IDA. G. SHEARMAN et al.; respondents,

v.

ALPIN J. CAMERON, appellant.

[Argued November 30th, 1910. Decided June 19th, 1911.]

A testator by his will. probated on October 31st, 1891, directed that the executors thereof, having ascertained, in a manner provided therein, the value of his interest in the business of a firm with which he was connected, should permit the sum so ascertained to remain in such business for five years, at the end of which period it was to be withdrawn by such executors and turned over to a trustee who was one of the said executors. After the expiration of these five years the executors filed in the orphans court their account as executors, which was duly allowed on June 21st, 1899, after which the sum shown by such account was treated by the trustee as the fund. Upon a bill for an accounting filed in the court of chancery in 1905 against said trustee by persons in privity with parties before the orphans court—*Held*, that the decree of the orphans court allowing the account of the executors, in which they charged themselves with the sum so permitted to remain in the business, conclusively established the amount for which, in the absence of fraud or negligence on his part, such trustee was liable to account.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Garrison, whose opinion is reported in 76 N. J. Eq. (6 Buch.) 426.

*Mr. Cornelius Doremus,* for the appellant.

*Mr. Gilbert Collins* and *Mr. Marshall Van Winkle,* for the respondents.

The opinion of the court was delivered by

GARRISON, J.

The appellant, Alpin J. Cameron, is the son of Alexander J. Cameron, deceased, and one of the executors of his last will, also the trustee thereunder. The respondents are grandchildren of the

testator who, having an interest in the trust established under his will, filed this bill against the appellant for an accounting and obtained a decree surcharging his account as trustee with the sum of $8,368.98. The amount with which the trustee's account is thus surcharged is the difference between the value of the interest of the testator in the firm of A. J. Cameron & Company as shown by the account of the executors allowed by the decree of the orphans court of Bergen county in 1899, and the value of the same item as determined by the report of the special master confirmed by the decree of the court of chancery now before us.

The trustee, by the terms of the will, was to receive and administer a fund to be turned over to him by the executors, hence it is evident that the present controversy involves the question whether such trustee shall be required to account for a larger sum, as having been turned over to him by the executors, than the executors, according to the decree of the orphans court, had in hand for that purpose. In such an inquiry a fundamental question necessarily is the force and effect to be accorded to the decree of the orphans court.

To the consideration of this legal question the following facts are pertinent:

Alexander J. Cameron died on September 30th, 1891, leaving a will which was probated on October 31st, 1891. A large part of the personal estate of the testator was invested in the business of the firm of A. J. Cameron & Company which, prior to 1880, consisted of the testator and his son Alpin J. Cameron, and after that date of these two with W. P. Denegre. Alpin J. Cameron and his sister Alice were the executors of their father's will, and Alpin the sole trustee of its trust provisions. The will, in disposing of the testator's interest in the firm, provided that for five years it should be permitted by the executors to remain in the business subject to certain withdrawals by the executors and to the ascertainment by them and the surviving partner of the value of such interest and the determination by the trustee as to the terms upon which it should share in the profits of the business during the said five years. At the end of the five years the executors were to withdraw such sum from the business of the firm and

turn it over to the trustee.   Subject to the duties to be thus performed by the executors as conditions precedent to the vesting of the trustee's title to such trust fund, the fund so established when turned over to him became subject to the trusts set forth in the will.

After the death of the testator, the value of his interest in the business of the firm of A. J. Cameron & Company was ascertained to be $37,741.63, which was permitted by the executors to remain in the business for five years from the date of such ascertainment, *i. e.*, until 1898.   On May 17th, 1899, the executors filed with the surrogate of Bergen county their account as executors from October 6th, 1891, to December 31st, 1898, in which the accountants, among other things, charged themselves as of January 1st, 1892, with the value of the interest of Alexander J. Cameron, deceased, as follows:

"1892. Jan. 1. Balance to credit of Alexander J. Cameron in the firm of A. J. Cameron & Co., Yarn Merchants of New York and Philadelphia of which firm Alexander J. Cameron was a member.   This balance was determined at the request of the Executors, by Allan Cameron of Westford, Mass., brother of Alexander J. Cameron.   See Allan Cameron's statement accompanying this account $37,741.63.   The above interest of Alexander J. Cameron was invested with A. J. Cameron & Co. with the understanding that A. J. Cameron & Co. would pay for five years or longer at rate of 10 per cent. per annum on balance of the account."

This account was in due course reported to and allowed by the orphans court as follows:

"*To the Judge of the Orphans' Court of the County of Bergen:*

"The above account being by me audited and stated, I now report the same to the Court for settlement and allowance.   June 21st, A. D. 1899.   David A. Pell, Surrogate."

"Bergen County Orphans' Court, Term, April, A. D. 1899.   Alpin J. Cameron and Alice E. Cameron, Executors of Alexander J. Cameron, dec'd.   Final Account.   The account of the above named executors being reported to the Court, duly audited and stated by the Surrogate, and it appearing by proof that due notice of presenting the same to the Court at this term for settlement and allowance has been duly given, as required by law, and no exceptions being made thereto, the Court do thereupon allow the same in all things as reported by the Surrogate. Done in Open Court June 21st, A. D. 1899.   (Signed) David D. Zabriskie, Judge."

The amount thus established was thenceforth treated by the trustee as the trust fund created in accordance with the terms of the testator's will.

On May 6th, 1905, Alice E. Cameron died, leaving a will by which an interest in said trust vested in the respondents who thereupon filed the present bill under which an interlocutory decree was made ordering the defendant as trustee to render an account of the estate bequeathed in trust to him. The report of the special master stating such account having been made, and exceptions thereto having been filed and heard, a further order was obtained by which the matter was referred back to the special master with an express instruction to restate the trustee's account "so that the initial credit of the interest in the firm with the deductions to be allowed against it shall appear." Under this express order the special master reported as follows: "1891, December 31st. The trustee accountant is charged with the amount of the interest of Alexander J. Cameron in the firm of A. J. Cameron & Company as ascertained, $48,306.56," against which was allowed an undisputed credit of $2,295.95, which reduced such "initial credit" to $46,010.61, which is the same item as that allowed by the orphans court in 1899 as $37,741.63. The difference is the sum of $8,268.98 now in controversy; the propriety of surcharging the trustee with this amount over and above the amount shown by the account of the executors as allowed by the decree of the orphans court is the sole question involved in this appeal.

The sum thus in controversy probably represents overdrafts made by the testator at a time when the firm consisted of himself and his son, prior to 1880, when Denegre came into the firm and a new set of books was opened. The old books which were in existence in 1893, and were then used in the ascertainment of the testator's interest in the firm, have, in the intervening years, been lost, but the fact that they showed such indebtedness is not open to serious question. The ground of decision in the court below was not that the old books of A. J. Cameron & Company did not show such an indebtedness, but that, assuming such indebtedness to be shown, it should not have been considered in the ascertainment of the value of Alexander J. Cameron's interest in the firm

as constituted at the time of his death. Into the merits of this controversy we shall not go for the reason that, in our opinion, the question of the value of such interest was foreclosed by the decree of the orphans court, which established, and as we think conclusively, the amount of the trust fund in the hands of the executors, for which, upon its being turned over to the trustee, he must account. In the absence of fraud or negligence on the part of such trustee of which such decree was the result, we think that it could be neither ignored nor attacked in the court of chancery by a restatement of such executors' account in which the value of the testator's interest in the firm was swelled by the amount in controversy for the purpose, or at least with the result, of increasing the sum for which such trustee was compelled to account.

It is a doctrine of universal acceptation that the judgment of a competent court acting within its jurisdiction is conclusive upon parties and privies as to all matters adjudged upon which the parties were of right entitled to be heard. The application of this general rule to the decrees of orphans courts is illustrated in numberless cases in our reports from which the following may be selected for citation: *Conover's Executors* v. *Conover*, 1 *N. J. Eq.* (*Saxt.*) 403; *Boulton* v. *Scott*, 3 *N. J. Eq.* (2 *Gr. Ch.*) 231; *Black* v. *Whitall*, 9 *N. J. Eq.* (1 *Stock.*) 572; *Obert* v. *Hammel*, 18 *N. J. Law* (3 *Harr.*) 73; *Vankleek* v. *O'Hanlon*, 21 *N. J. Law* (1 *Zab.*) 582; *Zabriskie's Executors* v. *Wetmore*, 26 *N. J. Eq.* (11 *C. E. Gr.*) 18; *Search* v. *Search*, 27 *N. J. Eq.* (12 *C. E. Gr.*) 137; *Plume* v. *Howard Savings Bank*, 46 *N. J. Law* (17 *Vr.*) 211; *Clark* v. *Costello*, 59 *N. J. Law* (30 *Vr.*) 234; *Tchan* v. *Maloy*, 45 *N. J. Eq.* (18 *Stew.*) 68; *Weyman* v. *Thompson*, 50 *N. J. Eq.* (5 *Dick.*) 8; *Seymour* v. *Goodwin*, 68 *N. J. Eq.* (2 *Robb.*) 189; *Woolsey* v. *Woolsey*, 72 *N. J. Eq.* (2 *Buch.*) 898.

These cases present the evolution of this rule commencing with our first equity report, where, in the case of *Conover's Executors* v. *Conover*, Chancellor Vroom, having held (as abstracted in the head note) that "when executors have settled their account in the orphans court, if there be no evidence of fraud or mistake, this court will not disturb such settlement;" added in the text of the opinion, *"even if that could be done in this incidental way."*

The latest application of the rule is in *Woolsey* v. *Woolsey,* which, upon legal principle, is indistinguishable from the present case.

The rule thus illustrated requires for its application the legal identity of the parties in interest, the actual identity of the matter previously adjudged by the orphans court, and a procedure therein that properly placed such matter in train for such adjudication.

In the present case the interests involved were represented in the orphans court and the matter adjudicated by the decree of that court, and that now adjudged *de novo* by the court of chancery are identical, being, in each case, the value of the testator's interest in the firm. That the value of such interest was, under the terms of the testator's will, not only a proper but a necessary item of the executors' account cannot be questioned. The testator's will required the executors to leave in the firm, for the period of five years, not an indeterminate interest, but a sum of money, the exact amount of which had been previously ascertained, and which, at the end of such period, they were to withdraw, and hence to be charged therewith as executors. Their account in this respect was therefore properly before the orphans court for adjudication as to "the truth and fairness of the same," to quote from the opinion of this court in *Woolsey* v. *Woolsey,* which opinion also said that "the orphans court, on such an accounting, may ascertain the condition of the estate as fully as can the court of chancery." The same opinion also points out that, as to a question involved in such accounting, the legal situation was the same in case of a neglect to litigate as in that of unsuccessful litigation. The legal question is whether the procedure of the court afforded an opportunity to litigate, not whether the parties concerned availed themselves of it. The question of fact whether the judge of the orphans court actually weighed the propriety of a particular item has the same legal significance that a similar question would have with respect to the action of the chancellor where a decree *pro confesso* had been taken or that of the justices of the supreme court in case of an assessment filed under a judgment by default, *i. e.,* the rule in question is concerned, not with the proofs as to a given case, but with a conclusive presumption as to all cases. Such rule applies with peculiar force to a

case like the present, where a fund to be administered by a trustee is to be got in and turned over to him by executors. The hardship of a general rule by which such a trustee may be required to account for a larger sum than he received from such executors, is not much greater than that of requiring him to vindicate, years afterwards, not his administration of his trust, but the decree of the court that had allowed the account of such executors. A general rule of law must vindicate itself without respect to persons or regard to their identity. The fact that in the present case the trustee was one of the executors, while a circumstance to be considered upon the question of his opportunity for fraud, is entirely without significance upon the question of the effect accorded by a general rule of law to the decree of a court of competent jurisdiction. The significance of such identity, upon the question of fraud, was, we may say, in our opinion, entirely eliminated from the case by the calling in, by the executors in 1893, of Mr. Allan Cameron, a brother of Alexander and an expert accountant, to examine the firm's accounts and appraise the value of the testator's interest in its business. The appellant and his sister Alice were the executors, Alice and another sister were then living, and if the appellant had sought to take advantage of his dual position to work a fraud upon his sisters, the last thing he would have done would have been to call in their uncle to act as an expert appraiser.

The error by which the appellant is required to account in the court of chancery for a larger sum than that shown by the decree of the orphans court to have come into his hands as trustee, should be corrected by accepting the amount established by such decree as the basis for the appellant's account of his administration of his trust; for such modification the decree brought up by this appeal is remitted to the court of chancery.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH—10.