This is a renewal of litigation which was the subject of my opinion in Temple v. Clinton Trust Co., 141 N.J. Eq. 372,
filed last February. In that case, the 35 complainants alleged that they had been depositors of the Trust Company on March 3d 1933, and that they had never been paid in full. They sued for moneys that were about to be distributed among the common stockholders of the company. I struck their bill of complaint on the ground that it appeared that they had received full satisfaction for whatever was due them as depositors and hence that they showed no interest in the fund. Thereupon, they filed the bill in the present cause in which they repeat the allegations of the former bill with certain additions. Some of the defendants move to dismiss the bill on the ground that it shows no cause of action, and complainants move to strike a plea of res adjudicata which has been interposed by another defendant.
The Trust Company in March, 1933, suspended business because of insolvency. Its entire capital and surplus had been lost; it owed depositors and other creditors about $4,000,000; and its assets were less than $3,600,000. A plan of reorganization was adopted and put into effect the next year, when the company resumed operation. Pursuant to this plan, the Trust Company obtained $400,000 new capital, namely, $250,000 from the Reconstruction Finance Corporation, for which it issued Class "A" preferred stock and $150,000 from its old stockholders and others for Class "B" preferred stock. It made a settlement with its depositors whereby it made available to them as demand deposits in the reopened bank 50% of their old deposits, issued to them *Page 287 
Class "B" preferred stock for 25%, and obtained for them participation certificates of the Newark Mortgage Company in an amount equal to 25% of their deposits. The complainants, who were old depositors, received such participation certificates and continued to hold them until the summer of 1945 when they surrendered the certificates to the Mortgage Company under circumstances described below. The complainants sue not only for themselves but in behalf of all other holders of such certificates. They alleged wrong of which they complain, was the transfer between May, 1934, and April, 1939, by the Mortgage Company to the Trust Company of good assets of a value of upward of $340,000 in exchange for worthless assets, thus enhancing the value of the common stock of the Trust Company at the expense of the holders of the participation certificates of the Mortgage Company.
Each participation certificate read as follows:
"The Newark Mortgage Company, a corporation of the State of New Jersey, hereby certifies that the holder hereof is entitled to participation to the extent of (here insert a sum equal to 25% of the original holders' deposit on March 3d 1933) in and to certain assets consisting of notes, real estate, and bonds and mortgages aggregating $948,895.19 which have been transferred to it by the Clinton Trust Company of Newark, N.J., a Corporation of New Jersey, pursuant to a certain reorganization plan, as amended, adopted by the Board of Directors of said Clinton Trust Company of Newark, N.J., at a meeting held on December 26th, 1933, subject to the right of substitution, as set forth in said reorganization plan as amended.
"This certificate is issued pursuant to and in accordance with the terms and provisions of a certain agreement entered into between the Clinton Trust Company of Newark, N.J., and the Newark Mortgage Company of Newark, N.J., dated April 20th, 1934, an executed copy of which is on file at the office of said Clinton Trust Company, 505 Clinton Avenue, Newark, N.J., to which agreement reference is hereby made, and the holder hereof by the acceptance of this Certificate consents to all terms and provisions in said agreement contained and agrees to be bound thereby.
"The Newark Mortgage Company will liquidate the said assets and convert the same into cash, and will distribute the net proceeds of such liquidation to and among the holders of these and similar participation certificates issued by it under said reorganization plan.
"The total amount of participation certificates to be issued in accordance with such reorganization plan is $903,896.19 and upon the distribution of the proceeds of the liquidation of said assets, the *Page 288 
holder hereof, shall be entitled to such part of the moneys so distributed as the amount of this certificate bears to the total amount of all participation certificates issued under such reorganization plan.
"Such payments in liquidation shall be made from time to time as the Board of Directors of the Newark Mortgage Company shall deem advisable.
"This participation certificate, and all other participation certificates, will not be registered, but will be transferable by delivery merely, and must be presented at the time payments are made hereunder; the amount of payment shall be endorsed hereon, and in making such payments, the Newark Mortgage Company shall be authorized and empowered to deem the person presenting the same as the legal owner hereof and entitled to receive such payment or payments.
"This certificate does not bear interest."
Attention is called to the last clause in the first sentence: "subject to the right of substitution as set forth in said reorganization plan as amended." The plan of reorganization contained this provision:
"The Clinton Trust Company will transfer to a holding company assets amounting to $980,742.88. Participation certificates in these assets will be issued to depositors. The Clinton Trust Company will have the right to substitute any of the assets which remain in its possession after the transfer of assets to the holding company. The capital stock of the holding company in the sum of $1,000 will be held by the Trust Company but carried on the books as of no value. The Board of Directors in the reorganized bank and the holding company will be identical as to personnel and will be elected by holders of preferred stock."
The Newark Mortgage Company is the holding company referred to in the plan. The bill shows that the assets turned over to the Mortgage Company were deemed unacceptable by the Reconstruction Finance Corporation, and that their actual value was much less than book value. The participation certificate also mentions a certain agreement between the two companies and states that the certificate holder "consents to all terms and provisions in said agreement contained and agrees to be bound thereby." The agreement sets forth:
"For the period of five years after the date of this agreement" the Trust Company "shall have the right of substituting any of the assets (other than the banking houses, furniture and fixtures) which shall be retained by it under the plan of reorganization and any renewal *Page 289 
or renewals of the notes and bills purchased so retained by it, or any balance due thereon, for any of the assets transferred to the party of the second part hereunder (the Mortgage Company), or any renewal or renewals thereof or the proceeds thereof, or any asset in the hands of the party of the second part, as a result of any such substitution."
The purpose of the plan of reorganization and the steps taken pursuant to it, was to transform an insolvent bank into one that could operate safely. To this end, the amount due depositors was cut in half and there was added to capital $400,000, an amount equal to approximately 21% of the reduced deposits. In order to clear the bank portfolio of assets that were euphemistically called "unacceptable," assets with a book value equal to one-quarter of the amount on deposit when the bank closed, were transferred to the Mortgage Company. It was the intention of the parties that the bank retain the better assets and transfer the worst to the holding company. But it was impossible to foresee exactly which promissory notes, after being nursed along, would eventually be liquidated and which ones would become utterly worthless. The classification of assets as acceptable or unacceptable, made at the time of the reorganization of the bank, merely expressed an estimate as to what would probably happen. So in order further to strengthen the bank, it was given the right of substitution, so that if some assets transferred to the Mortgage Company should turn out well, the Trust Company might recapture such assets and in their place turn over to the Mortgage Company assets of equal book value, but which, in the course of time, had become of poorer quality. The parties intended that the Trust Company should have whatever assets might prove, during the period of five years, to be the best assets. Conversely, they intended that the old depositors as holders of participation certificates, should have the beneficial title in those assets, and only those that, during the same five-year period, should turn out to be the worst of all. I think this appears from a careful consideration of the facts disclosed in the bill, as well as the terms of the reorganization plan and the agreement of April 20th, 1934. If this be so, the charge that good assets were transferred by the Mortgage Company to the Trust Company *Page 290 
during the five-year period, in exchange for worthless assets, does not state a violation of any right of the complainants or other certificate holders.
The answer in lieu of plea sets forth that complainants are concluded by the decree made upon a bill of complaint of the Newark Mortgage Company, filed June 23d 1944, against the Clinton Trust Company and more than one hundred holders of certificates of participation, and certain other parties. The bill shows the reorganization of the Trust Company and the formation of the Newark Mortgage Company in much detail. A copy of the reorganization plan and the agreement between the two companies dated April 20th, 1934, is annexed to and made part of the bill. The bill sets forth "in and by said agreement, the right of substitution referred to in said plan of reorganization was limited to five years from the date thereof. During said five-year period, said Clinton Trust Company made numerous substitutions pursuant to the provisions of said reorganization plan and said agreement." Also made part of the bill is the account of the Mortgage Company. Two of the schedules show the substitutions, item by item, the assets transferred to the Trust Company totaling $453,656, and assets transferred by the Trust Company to the complainant totaling $453,593. To illustrate, the first item in the list of assets transferred to the Trust Company is a note made by Almoral Holding Company in the amount of $1,055. The bill prays that those holders of certificates of participation who are named in the bill, be made defendants as representatives of all holders of certificates; that the account of complainant and its proceedings in the liquidation of the assets may be approved and allowed, and complainant discharged from its trust; that the assets still in its hands may be sold at public vendue and the net proceeds be distributed among the holders of certificates of participation. The bill also contains sundry other matters and prayers for relief not pertinent to the present litigation.
Upon receiving the bill, the court designated the individual defendants as representatives of all holders of certificates of participation issued and outstanding. The Trust Company and two of the representative defendants filed answers, both *Page 291 
of the latter admitting that numerous substitutions had been made and stating that they had no knowledge or information with reference to the account. A decree pro confesso was taken against the other individual defendants. The case came to hearing in the presence of the solicitors of the answering defendants and a final decree was made April 3d 1945. It recites that it appeared from the proofs that numerous substitutions of assets were made and that the complainant had filed its account showing such substitution, and that the account should be allowed and approved, and thereupon it is adjudged "that the account of the complainant and its actions and proceedings in respect to said assets, including the substitution of assets, filed with the bill of complaint herein, * * * be and the same are hereby approved and allowed, and complainant be and it is hereby discharged from its trust and all things in relation thereto, except the sale of all remaining assets and final distribution of the funds in its hands." The decree further ordered the public sale of such assets and the distribution of the fund. In due course the sale was made and approved by the court, and the net avails were distributed among the certificate holders. The bill of complaint in the present cause shows that the complainants were required to surrender their certificates as a condition precedent to payment of their share of the fund, and that they did surrender their certificates to the Mortgage Company "in ignorance of the facts hereinabove alleged" — which I take to mean the wrongful substitution of assets.
Although only three of the present complainants were among the named defendants in the Mortgage Company's suit, they all belong to the class which was represented by the defendants and they, like all certificate holders, are concluded by the decree in that suit to the same extent as if they had been joined individually in that action. Willoughby v. Chicago Junction Railway, c.,Co., 50 N.J. Eq. 656; Goodbody v. Delaney, 80 N.J. Eq. 417;Solimine v. Hollander, 128 N.J. Eq. 228.
The complainants point out that they are seeking relief against Fidelity Union Trust Company, which was not a party to the accounting suit. That company has recently *Page 292 
bought all the assets of the Clinton Trust Company and is about to pay a part of the purchase price to the common stockholders of the vendor. Complainants' cause of action lies primarily against their trustee, the defendant Mortgage Company; then they trace the trust assets or their proceeds to the Clinton Trust Company and on to the Fidelity Union Trust Company, and at this point they are attempting to regain the money which represents the assets before it reaches the common stockholders. The actual contest is between the certificate holders and the Clinton stockholders, but the certificate holders' title depends upon their cause of action against the Mortgage Company. If that cause of action is barred by the decree, the common stockholders and the Fidelity Union Trust Company can take advantage of the estoppel. Scott v. Hall, 60 N.J. Eq. 451; Friedlander v.Lehr, 101 N.J. Eq. 740. Perhaps it may be considered that the certificate holders had an independent cause of action against the Clinton Trust Company since it dictated the substitution of assets. If so, that company was a party to the 1945 action and decree. Although the company and the certificate holders were co-defendants, they were adverse so that a finding that assets had been improperly substituted, would have resulted in a decree that the Trust Company restore them to the Mortgage Company. As between the present complainants and the present defendants, the judgment in the former case is conclusive.
The bill filed by the Newark Mortgage Company in 1944, was in the nature of a bill quia timet, filed to secure repose. In reRothenberg, 129 N.J. Eq. 377. The decree thereon conclusively established the propriety of the numerous substitutions of assets; it bars the complainants from asserting that any such substitutions were a violation of the duty owed to complainants or that complainants were injured hereby. Shearman v. Cameron,78 N.J. Eq. 532; In re Leupp, 108 N.J. Eq. 49, 58; City BankFarmers Trust Co. v. McCarter, 111 N.J. Eq. 315.
The motion to strike the answer in lieu of plea is denied, and the bill will be dismissed because it shows no cause of action and because the record in the earlier case is conclusive. *Page 293