THE MERCER COUNTY TRACTION COMPANY

*v.*

THE UNITED NEW JERSEY RAILROAD AND CANAL COMPANY.

[Filed April 16th, 1903.]

1. When proceedings are taken by a trolley company, under section 32 of the laws of 1903, to have its mode of crossing a railroad defined, the railroad company may challenge the right of the trolley company to lay its tracks at the place of crossing; and where it is incorporated as an extension of another road, its legality is dependent upon the legal existence of the older trolley road.

2. By act of 1896 (*P. L. of 1896 p. 329*) no trolley can be laid upon any highway in a township without the consent of the township committee, and such consent cannot be granted until there shall have been filed with the township clerk the consent, in writing, of the owners of at least one-half in amount, in lineal feet, of property fronting on the highway, which consents shall be executed and acknowledged as are deeds entitled to be recorded.—*Held,* that consents not sealed were insufficient to confer power upon the committee to grant the statutory permission.

3. Where an ordinance purporting to give such consent was, upon *certiorari* prosecuted by the railroad company, held to be valid, but the reasons which were assigned for its vacation and which were passed upon by the court did not include the want of sealed consents by abutters—*Held,* that the railroad company is not estopped in this proceeding from attacking the ordinance upon this ground.

---

*Mr. John H. Backes,* for the petitioner.

*Mr. Alan H. Strong,* for the defendant.

Reed, V. C.

This is a petition filed by the Mercer County Traction Company for the purpose of having this court fix a method by which its road shall cross the road of the Pennsylvania Railroad Company at Yardville. The present road was organized as an extension of another road, also known as the Mercer County Traction Company, running from Allentown to Yardville. The present road starts from the terminus of the former road and runs one thousand four hundred and sixty-two feet northerly. The United New Jersey Railroad and Canal Company, lessors, and the Pennsylvania Railroad Company, lessees, of the road to be crossed, challenge the power of this court to act upon the petition. The objection to the jurisdiction of the court is put upon the ground that the conditions essential to equip the petitioner with a legal existence have not been performed.

The incorporation of the petitioner seems to have been under section 6 of the act of 1893, which provides for the extension of an existing railway. The first objection is that the railroad of which the petitioner pretends to be an extension, namely, the road of the original Mercer County Traction Company, itself had no legal existence. The evidence offered by the petitioner, in respect to the organization of that road, is a certificate of incorporation, dated January 19th, 1899, recorded in the office of the clerk of Mercer county July 31st, 1899, and filed in the office of the secretary of state on the same day; also a location of the route of the road and a map, filed December 7th, 1899; also an ordinance of the township committee of the township of Hamilton granting permission to the said company to lay its road along the highway indicated in the description and shown on the map of its route, an acceptance by the company and the officers of the company, filed January 23d, 1900, and also the written consents of certain owners of land abutting on the highway.

The evidence offered in respect to the organization of the road of the petitioner is a description of the road, with a map attached, filed in the secretary of state's office on August 23d, 1901; an ordinance of the township committee of the township of Hamilton granting permission to use the highway; acceptances by the company and the officers of the company of the

ordinance, filed in the office of the secretary of state October 9th, 1901, and consents of abutting owners along the highway.

It is insisted that the existence of the original road is not proved, because the consent by the township to the laying of the original road was invalid, in that there was not filed with the township clerk the consent in writing of the owner or owners of at least one-half in amount, in lineal feet, of the property fronting on the street or highway upon which the road was to run.

The act controlling this matter is to be found in *P. L. of 1896 p. 329.* This act provides that no street railroad shall be constructed upon any street or highway except upon the consent of the governing body of such municipality, town, township, village or borough. The act contains a proviso, as follows:

"That such permission to construct, maintain and operate a street railway shall in no case be granted in whole or in part until there shall be filed with the clerk of such governing body, or other equivalent officer, the consent, in writing, of the owner or owners of at least one-half in amount, in lineal feet, of property fronting on the streets, highways, avenues and other public places, or upon the part of the street or streets, highway or highways, avenue or avenues and other public place or places, through or upon which permission to construct, operate and maintain a street railway is asked, and any such consent may be signed by an attorney in fact thereunto duly authorized by any owner, or by an executor or trustee holding the legal title or having power of sale, which consent shall be executed and acknowledged as are deeds entitled to be recorded."

It is first objected that it does not appear that those purporting to give their consents, filed in the township clerk's office, owned the requisite number of feet required by the statute; and it is objected, secondly, that the consents are not executed in accordance with the statutory requirements—the statute requiring that the consents shall be executed and acknowledged "as are deeds entitled to be recorded."

In respect to the absence of proof that those who signed the consents owned the requisite number of lineal feet, nothing appears but the statement in the written consents of the number of feet owned by each consenting owner. As the filing of the requisite consent was a condition precedent to the power of the township committee to pass the ordinance, I think that the fact of the passage of the ordinance should be regarded as evidence

that the committee found that the consents filed were, in this respect, in accordance with the statute. The committee could resort to whatever evidence it wished to satisfy itself of that fact. It is true that the proceedings were of a statutory body with a limited power, yet so long as nothing appears in the record of their proceedings to exhibit an absence of power to act, and inasmuch as the statute requires no record of the decision of the committee in respect to the fact that the owners of the required feet had consented, it may be assumed, until the contrary is shown, that this fact was satisfactorily proven to exist.

The remaining objection, however, is based upon what appears in evidence, viz., that the consents which were filed were neither sealed nor acknowledged as sealed instruments. The statute requires that the consents shall be, not merely acknowledged, but shall be executed "as are deeds entitled to be recorded." The word "consent" includes those made by the owner himself, as well as those made by his attorney in fact, or by an executor or trustee holding the legal title or having a power to sell abutting lands. Now, it is common learning that one of the requisites of a deed is a seal. The grant of an easement requires a seal. It is, of course, true that equity can treat an unsealed instrument, purporting to be a deed or grant, as an agreement creating an equitable interest in, or a lien upon, the land which is the subject-matter dealt with by the imperfect instrument. That rule, however, is inapplicable in this proceeding; for while the method of crossing is put by the legislature under the supervision of a court of equity, yet one of the statutory conditions upon which the right of the trolley road to cross is that the petitioning road has not merely the consent of a certain proportion of abutting owners, but that the consents shall be evidenced in a form fixed by the statute. To make these consents provable the statute requires that they shall be executed and acknowledged as deeds. These were not. And so the filed consents were not provable as such; and, at the time of the passing of the ordinance granting permission to the original traction company, the condition was as if no legal consents had been filed with the clerk. It follows that it is not proved that a legal road existed, of which the present road is an extension.

Again, the same objection in respect to the legality of the consents is raised in regard to the validity of the petitioning road. The consents of the abutting owners last mentioned are on one paper having seals attached to the names of the landowners, but the certificate of acknowledgment, with one exception, states merely that the grantors signed and delivered the same as their voluntary act and deed. Had the certificates stated that the owner "acknowledged that they executed the instrument as their voluntary act and deed," the acknowledgment would have been good, although sealing was unmentioned. *Sharp* v. *Hamilton, 7 Halst. 109.* I think that these acknowledgments are sufficient. The signers acknowledge that they signed the consents and delivered them as their voluntary act and deed. A deed imports a sealing, and these consents were actually sealed.

It is also objected that consents should have been filed with the county clerk as a condition precedent to the granting by the board of chosen freeholders of Mercer county permission to place this road upon a macadamized county road. The act of 1894 provided that no street railroad shall be constructed upon a street or highway in a municipality, town, township, village or borough except upon the consent of the governing body of such municipality. It provides that such consents shall not be granted by the governing body of any such municipality, &c., until consents by a certain proportion of lineal feet owned by abutters upon the road shall have been filed in the office of the clerk of the municipality, &c.

The act of 1896 (*P. L. of 1896 p. 329*) clearly supersedes the act of 1894, as it covers all its provisions respecting consents. This act provides that no street railroad shall be constructed upon any street or highway in any city, town, township, village or borough except upon the consent of the governing body of such municipality, town, township, village or borough. The act then provides for the consent of the abutting owners, in the manner already exhibited.

It is perceived that the word "city" is substituted in the act of 1896 for the word "municipality" in the act of 1894, and when the word "municipality" is afterwards used, followed by the other specified instances, the word undoubtedly refers to

cities.  It is the governing body of such *cities, towns, townships, villages and boroughs* with which all consents to the required permission shall have been filed.  All this is to be found in the first section of the act of 1896.  The second section of the act deals with the manner of obtaining permission to change the motive power used by a street railroad.  Then follows a proviso that if any board, body or public authority, other than the governing body of such municipality, town, township, village or borough, shall have control of any of the streets or highways over which the proposed street railroad is to be constructed, &c., the consent of such board, body or public authority shall also be required.  Then follows a provision requiring that such consent shall be granted only upon notice, to be given in the same manner as provided for in respect to notices to be given upon application for the consent of municipalities.  It is under this provision that the application was made to the board of chosen freeholders, as the board having control of the road over which this proposed trolley is to be constructed.

It seems entirely clear that the consent of the abutters is required to be only once given, namely, before the municipal authorities, mentioned in the first section of the act of 1896, grants its permission.  The provision for the consent of the abutting owners is referable to the action of the governing body of cities, towns, townships, villages and boroughs.  The only condition attached to the granting of the latter permission is that notice shall have been given in the same manner as provided for in the first section.

While expressly providing for the same notices, it is entirely silent as to any consent of abutting owners in the manner required in the first section.  The express requirements of notice, coupled with silence in regard to consent, excludes the idea of an absurd requirement that two consents of the same abutting owners shall be executed and filed before a valid grant of permission can be given by the county.

It is again objected that there is no compliance with the statutory requirement that, before the beginning or construction of any extension or new trolley line, the corporation shall file in the office of the secretary of state a description of the route of

such extension or new line, showing the termini, together with a map exhibiting the same, with the courses and distances thereof. Upon the map filed by the present petitioner is marked a distance from a southerly terminus running northerly one thousand four hundred and sixty-two feet, more or less. The description filed omits the words "more or less," and described the southerly terminus at a point in the road known as Crosswicks and Trenton turnpike, where the road leading from Groveville to Hamilton Square intersects the same, and runs thence a certain course of one thousand four hundred and sixty-two feet to a point in said highway, which point is the northerly terminus. I think the words "more or less" upon the map may be rejected as surplusage. They have no significance whatever when the distance is the only indication of the point where the road stops. I think a point one thousand four hundred and sixty-two feet from the southerly terminus is the northerly terminus of the present road, and sufficiently appears, both in the written description and upon the map.

These conclusions still leave wanting the provable consents by the abutting owners to the laying of the road, of which this is an extension.

There is, however, offered in evidence the record of a proceeding upon *certiorari,* in which the Pennsylvania Railroad Company was prosecutor and the petitioner was a defendant. The writ seems to have brought up the ordinance passed by the township committee of Hamilton township giving the petitioner permission to lay its road upon the highway within the township. This ordinance was adjudged by the supreme court and the court of errors, upon a writ of error, to be a valid ordinance.

This judgment would conclude the two parties mentioned in any proceeding brought directly to test the validity of that ordinance. The doctrine of *res judicata,* however, differs when applied to a new proceeding for the same, or part of the same, cause of action, and when applied to a different cause of action. In the former instance, everything that could have made for the plaintiff or for the defendant is settled by the first judgment. In the latter instance, only those issues actually presented and decided are concluded. *City of Paterson* v. *Baker, 6 Dick. Ch.*

*Rep. 50; Clark Thread Co.* v. *William Clark Co., 10 Dick. Ch. Rep. 658, 662.* The present proceeding must be regarded, not as a direct attempt to litigate the validity of the ordinance, but as a new proceeding, in which the validity of the ordinance and the existence of certain conditions essential to the validity of the ordinance comes into question. Therefore the only point upon which the Pennsylvania Railroad Company is estopped are those actually litigated in the *certiorari* proceedings. The issue actually tried in that proceeding was whether the ordinance was good as against the reasons filed for its vacation.

In *North River Meadow Co.* v. *Shrewsbury Church, 2 Zab. 424,* an action of debt was brought to collect an assessment imposed upon lands belonging to the church. The meadow company, in support of the assessment, put in evidence the record of a proceeding in *certiorari,* prosecuted by the church, to test the legality of the assessment. In this proceeding the assessment had been held to be legal. The supreme court held that, in the subsequent action to collect the assessment, the church was estopped from asserting that the assessment was invalid. It was so held upon the ground that the reasons assigned by the church for vacating the assessment in the *certiorari* proceeding embraced all the points suggested on the trial of the later action. It is true that, in the *certiorari* proceedings brought to test the ordinance in this case, general, as well as special, reasons were assigned for its vacation; but the court was not obliged and, under its practice, would not notice the former, and, in fact, did not do so.

Inasmuch as the want of filed consents by the abutting owners was not assigned as grounds of objection to the ordinance, the Pennsylvania Railroad Company is not estopped from now setting up this objection.

This renders it unnecessary to consider the question what the posture of affairs would have been had the Pennsylvania Railroad Company been estopped, in view of the fact that the United New Jersey Railroad and Canal Company, which was not a party to the *certiorari* proceedings, is a respondent in this cause. Unless, by its lease to the Pennsylvania Railroad Company, it stripped itself of all substantial interest in the road, and passed

the same to the Pennsylvania Railroad Company, it, not being estopped by the *certiorari* proceedings, would occupy a position to insist upon all the objections raised.

I am therefore constrained to the conclusion that, by reason of the want of provable filed consents of the abutting owners along the road of which the petitioner's road is an extension, the petitioner has no standing to ask for the order now sought.