This is an appeal from an order of the Hudson County Orphans Court dismissing an order dated April 9th, 1937, to show cause why three decrees approving three intermediate accountings of The Trust Company of New Jersey, as executor and trustee, bearing dates respectively, February 10th, 1922, February 26th, 1926, and January 10th, 1930, should not be reopened. The object of the appellants in seeking to reopen the decrees was to file exceptions thereto.
This matter was heard by me on June 26th, 1939. After counsel argued the issues they applied for leave to submit memoranda. Their requests were granted. They subsequently argued the issues orally, and on later occasions presented memoranda, the last being submitted on October 15th, 1941.
Richard Schlemm died October 3d 1920, leaving a last will and testament which was probated in Hudson County on October 15th, 1920. In and by his last will and testament he appointed the respondent, The Trust Company of New Jersey, his executor and trustee. The pertinent part of his will reads:
"Sixth: — All the rest, residue and remainder of my estate, real and personal and wheresoever situate, I give, devise and bequeath to my executor hereinafter named in trust, for the following uses and purposes:
"(a) To receive, hold and manage said residuary estate, to invest and re-invest the same, and collect and receive the income therefrom during the life of my wife, Josephine Schlemm, and pay from said income the taxes, assessments water rents and other governmental charges levied and assessed against the premises No. 111 Palisade Avenue, Town of Union, New Jersey, premium for fire insurance and repairs thereon so long as the same remains unsold; and pay four fifths of the balance of said income to my said wife and one fifth *Page 297 
thereof to my son Ridgley Schlemm, or in case he shall die before my said wife, then to his wife Lillian Schlemm, such payments of income to be made quarter yearly.
"(b) Upon the death of my said wife, from the principal of said trust, to purchase a plot in a cemetery in or near Hudson County, New Jersey, and to cause to be erected thereon a mausoleum, to which it is my desire and direction that my remains and those of my wife shall be removed. The total expense of the purchase of said plot, the erection of said mausoleum and the removal of my remains and those of my wife thereto, shall not exceed Ten thousand dollars.
"(c) Upon the death of my said wife, and after setting aside the amount necessary to carry out the directions in subdivision (b) of this paragraph of my will, to transfer, assign, convey and pay over to my son Ridgley Schlemm, the balance of the assets remaining in said trust, including any accumulation of income then in hand.
"In case my said son be then dead, to pay to his wife Lillian Schlemm, if living, the sum of Fifteen Thousand dollars, and if he leave issue surviving him, then to transfer, assign, convey and pay over, the balance of said assets and income (or all thereof if said Lillian Schlemm be then dead) to such issue, perstirpes.
"In case my said son be then dead, without leaving issue surviving, to transfer, assign, convey and pay over, the balance of said assets and income (or all thereof if said Lillian Schlemm be then dead) in equal shares to my nephews and nieces, or if any of then be then dead leaving issue, such issue to take perstirpes the share the parents would have taken if living."
The decedent's son, Ridgley, named in the sixth paragraph of his will, died on August 22d 1928, leaving him surviving his wife, Lillian M. Schlemm, a daughter, Anne Schlemm, born June 28th, 1918, and a son, Richard Schlemm, born July 26th, 1924.
The petition to the Orphans Court among other things recites that the testator Richard Schlemm had held 233 shares of the capital stock of The Trust Company of New Jersey (his executor and trustee), and 45 shares of The Colonial Life Insurance Company stock, a corporation of New Jersey; that after testator's death and prior to the year 1929, from time to time due to the reduction of the par value of the shares, to stock dividends, stock warrants, and for other reasons, the shares of The Trust Company stock increased to the total number of 2,304 shares.
Paragraph 8 of the petition reads as follows:
"Said shares of stock of said executor and trustee increased in value, from time to time, while in the possession of said *Page 298 
executor and trustee, until they had a market value of, and could have been sold for, the sum of approximately $225 per share, or $518,400 in the year 1929; and the stock of the said The Colonial Life Insurance Company likewise increased in value, from time to time, until it had a market value of, and could have been sold for the sum of approximately $49,500 during said year 1929."
Paragraph 10 of the petition reads:
"That the stock of the said executor, including the 2,304 shares belonging to said estate, have depreciated in value until each share is worth but from $4 to $5 per share, market value, at the present time, and no book value; the shares of stock of the said The Colonial Life Insurance Company, held as aforesaid, have depreciated in value until they are worth less than the sum of $250 per share; that because of the failure of the said executor or trustee to sell and dispose of said shares of stock the said estate has suffered a loss in excess of $600,000."
Paragraph 12, 13 and 14, respectively, read:
"12. Beginning the latter part of the year 1929 the said The Trust Company of New Jersey knew that it was becoming financially involved because of the fact of a world-wide depression which was then in existence, and investments which it had made in securities and real estate, loans which it had made, which were causing it daily substantial losses and which losses were reflected in the value of its stock and causing it to quickly depreciate, including the stock which it held for said estate; said executor and trustee further knew that its earnings were falling off from time to time and to such an extent that from time to time it had to reduce dividends which it had been paying upon its said stock and which resulted in about the year 1934 in the said executor passing or failing to pay any dividend, or dividends whatsoever; said executor and trustee knew that the reduction of its dividends and finally the failure to declare any dividends was bound to and did further affect said stock and cause it to depreciate in value.
"13. Said executor and trustee further knew that the said stock of the said The Colonial Life Insurance Company was *Page 299 
speculative stock and affected in the same manner as was the stock of said executor and trustee as set forth in the preceding paragraph although said stock did not depreciate as rapidly or as extensively as did the stock of said executor and trustee.
"14. It was against honest and businesslike judgment for the said executor and trustee to have held its own stock over so long for the aforesaid reasons; by holding said stocks, under the circumstances set forth herein, said executor and trustee was guilty of gross negligence and failed to use ordinary prudence in the management of said estate."
The petition further alleged that the executor trust company failed to file an inventory of the assets of the estate. In its concluding paragraph, among other things, it prayed for "permission to present evidence in substantiation of this petition if the court shall deem it necessary." (Italics mine.)
The appellants here contend that "the Orphans Court failed to advert to, or pass upon, the question of the petitioners being permitted, or not permitted, to take testimony to substantiate the allegations contained in the petition."
At the hearing on this appeal the petitioners offered to introduce evidence from the records of the trustee, claiming the right to do so under the ruling laid down in In re Bender,122 N.J. Eq. 192; 192 Atl. Rep. 718; affirmed, 123 N.J. Eq. 171;196 Atl. Rep. 677. In my opinion the situation here did not warrant the reception of new testimony. The Orphans Court record, I think, amply supplies evidence of the conduct of the executor-trustee in its administration of the estate's affairs. The further testimony which counsel announced he wished to submit would be but corroborative of the alleged gross negligence of the executor-trustee as expressed in the record of the Orphans Court, the petition of appeal to this court, and the argument of counsel thereon.
It is said in Clapp on Wills and Administrations in New Jersey649 § 465, under the caption "Hearing on Appeal," that: "In that class of cases in which the Prerogative Court has original as well as appellate jurisdiction, the Prerogative Court may either hear the case on the proofs below or in its discretion permit additional testimony to be taken." *Page 300 
Are the decrees in question the product of fraud or mistake? The decrees were entered without protest or objection on the part of the persons interested in the estate. When each accounting was filed, all interested persons received due and legal notice under the provisions of the then existing statutes. At the time the first two intermediary accounts were filed the two infants, who are represented in the petition to reopen the decrees, had contingent interests only; and their interests did not vest until after the death of their father, Ridgley Schlemm.
Counsel for the respondent contends that (1) it was incumbent upon appellants, as petitioners below, to show that they had a grievance within the period covered by the three accountings — that is, that they had been injured, or had suffered a loss, because of fraud or mistake manifested by the decree; (2) it was incumbent upon them to show that the decree or decrees in question were the result of fraud or mistake; and (3) that it was required of them to show that the fraud or mistake was of such character as in and of itself to have induced a wrongful decree, as well as the injury to be redressed, and that they failed to sustain their burden.
The provision of the Orphans Court Act governing the filing and passing of executors' and trustees' accounts, at the time in question, was section 127 (3 Comp. Stat. p. 3857), reading as follows:
"The sentence or decree of the orphans court on the final settlement and allowance of the accounts of executors, administrators, guardians or trustees shall be conclusive upon all parties, and shall exonerate and forever discharge every such executor, administrator, guardian or trustee from all demands of creditors, legatees or others, beyond the amount of such settlement, except for assets or moneys which may come to hand after settlement as aforesaid, excepting also in cases where a party applying for a resettlement shall prove some fraud or mistake therein, to the satisfaction of the said orphans court. (P.L. 1898 p. 761.)"
See Plume v. Howard Savings Institution, 46 N.J. Law 211;Crawford v. Lees, 84 N.J. Eq. 324; 93 Atl. Rep. 201; Ordinaryof New Jersey v. Webb, 112 N.J. Law 395; 170 Atl. Rep. 672; Inre Leupp, 108 N.J. Eq. 49; 153 Atl. Rep. 842. *Page 301 
Ordinary Magie in Baker's Case, 61 N.J. Eq. 592;47 Atl. Rep. 1046, said:
"Whether a decree allowing an intermediate account, exhibiting payments by an accounting trustee out of the trust funds to different persons, would conclusively bar a cestui que trust
from claiming, in a direct proceeding against the trustee, that certain payments should have been made to him and not to the persons appearing to have received them, it is not deemed necessary to determine. By the express provisions of section 108 of the Orphans Court Act, above referred to, the settlement of final accounts is made conclusive on all the parties thereto, unless a resettlement is applied for upon proof of some fraud or mistake, to the satisfaction of the court."
See, also, City Bank Farmers Trust Co. v. McCarter, 111 N.J. Eq. 315,
which is to like effect as the Baker Case, supra.
In Woolsey v. Woolsey, 78 N.J. Eq. 517; 76 Atl. Rep. 1076,
the court, among other things, said:
"In all cases where a decree in equity would be binding upon persons not in esse at the time, or upon persons whose interests had not yet arisen, the decree of the Orphans Court must be equally binding."
Mr. Justice Garrison, speaking for the Court of Errors and Appeals in the case of Shearman v. Cameron, 78 N.J. Eq. 532;80 Atl. Rep. 545, among other things, said:
"Into the merits of this controversy we shall not go for the reason that, in our opinion, the question of the value of such interest was foreclosed by the decree of the Orphans Court, which established, and as we think conclusively, the amount of the trust fund in the hands of the executors, for which, upon its being turned over to the trustee, he must account. In the absence of fraud or negligence on the part of such trustee of which such decree was the result, we think that it could be neither ignored nor attacked in the Court of Chancery by a restatement of such executors' account in which the value of the testator's interest in the firm was swelled by the amount in controversy for the purpose, or at least with the result, of increasing the sum for which such trustee was compelled to account. *Page 302 
"It is a doctrine of universal acceptation that the judgment of a competent court acting within its jurisdiction is conclusive upon parties and privies as to all matters adjudged upon which the parties were of right entitled to be heard. * * *"
Since the appellants allege fraud or mistake the obligation rests with them to point out particulars upon which the fraud or mistake is based. In Hyer v. Morehouse, 20 N.J. Law 125, it was, in effect, held that a party seeking to open, on the ground of fraud or mistake, an account that has been allowed and settled by the Orphans Court, must point out the particulars in which the account is fraudulent or erroneous, so as to apprise the opposite party of what is intended to be proved; and that he must lay such evidence of the fraud or mistake before the court, as to make out at least a prima facie case; and, that the burden of proof lies on the party alleging such fraud or mistake; and a rule calling on the other party to show cause why the account should not be opened, does not impose on such party the necessity of sustaining the account and decree.
Counsel for the appellants practically concedes that the investments of the estate paid large dividends during the period of the three accountings. He supplies the following record of dividends:
 Date Amount of Dividend
 January 3, 1921 .............................. $1,165.00
 April 4, 1921 ................................ 1,165.00
 July 5, 1921 ................................. 1,165.00
 October 3, 1921 .............................. 1,165.00
 January 3, 1922 .............................. 1,165.00
 April 3, 1922 ................................ 1,165.00
 July 5, 1922 ................................. 1,165.00
 October 2, 1922 .............................. 1,165.00
 January 2, 1923 .............................. 1,550.00
 April 2, 1923 ................................ 1,240.00
 July 2, 1923 ................................. 1,550.00
 October 1, 1923 .............................. 1,550.00
 January 2, 1924 .............................. 1,550.00
 April 2, 1924 ................................ 1,550.00
 July 2, 1924 ................................. 1,550.00
 October 2, 1924 .............................. 1,550.00
 January 2, 1925 .............................. 1,550.00
 April 2, 1925 ................................ 1,552.00
 *Page 303 
 Date Amount of Dividend
 July 1, 1925 ................................. 1,940.00
 October 1, 1925 .............................. 1,552.00
 January 2, 1926 .............................. 1,940.00
 April 1, 1926 ................................ 1,552.00
 July 1, 1926 ................................. 2,328.00
 October 1, 1926 .............................. 1,684.00
 January 1, 1927 .............................. 2,105.00
 April 1, 1927 ................................ 1,804.00
 July 1, 1927 ................................. 2,300.00
 October 1, 1927 .............................. 1,840.00
 January 3, 1928 .............................. 2,430.00
 April 2, 1928 ................................ 1,944.00
 July 2, 1928 ................................. 2,592.00
 October 1, 1928 .............................. 2,592.50
 January 1, 1929 .............................. 2,592.00
 April 1, 1929 ................................ 2,304.00
 July 1, 1929 ................................. 2,880.00
 October 1, 1929 .............................. 2,880.00
 January 2, 1930 .............................. 2,880.00
 April 1, 1930 ................................ 2,304.00
 July 1, 1930 ................................. 2,880.00
 October 1, 1930 .............................. 2,304.00
 January 2, 1931 .............................. 2,880.00

The drop in the trustee's dividends approximately began
 April 1, 1931 ................................ 2,304.00
 July 1, 1931 ................................. 2,304.00
 October 1, 1931 .............................. 2,304.00
 January 2, 1932 .............................. 2,304.00
 April 1, 1932 ................................ 2,304.00
 July 1, 1932 ................................. 1,728.00
 October 1, 1932 .............................. 1,728.00
 January 1, 1933 .............................. 1,728.00
 April 1, 1933 ................................ 806.40
 July 1, 1933 ................................. 806.40
 October 1, 1933 .............................. 766.08

On October 1st, 1938, the payment of dividends ended.
Counsel for appellants in his brief (Brief No. 2, page 16) says that in the first account of the trustee it shows that it held 233 shares of its own stock at a value of $340 per share, or a total of $79,220 out of a total estate of $146,452.01, or approximately 55% of the total assets of the estate consisted of the trustee's own stock. In the second account of the trustee the balance of the estate in the hands of the trustee *Page 304 
was shown to have been $114,048.32; of this amount $79,195 was shown to have been the value of 388 shares of its own stock, or approximately 70% of the total of the estate; this account, the second one, was filed on January 20th, 1926. The third account was filed on December 2d 1929, and showed a balance in the hands of the trustee of $154,724.28; this account shows that the trustee held 2,304 shares of its own stock of a value of $152,469.08, out of a total estate of $154,724.28, or approximately 80% thereof.
The affidavit of the executor trust company's trust officer. Clifton, shows that the trustee purchased its own stock on declared subscription warrants, as follows (case, page 25):
"July 2, 1926, out of proceeds of sale of subscription
 warrants .............................................. 33 shares
January 15, 1927, out of proceeds of sale of subscription
 warrants .............................................. 39 shares
October 14, 1927, out of proceeds of sale of subscription
 warrants .............................................. 26 shares
March 22, 1928, out of proceeds of sale of subscription
 warrants .............................................. 130 shares
 ____
 Total ........................................... 228 shares"
 Boulton v. Adm'rs of Scott, 3 N.J. Eq. 231, is authority for the proposition that fraud or mistake must be apparent on the face of the accounting. To the same effect is Runkle v. Gale,7 N.J. Eq. 101. In Boulton v. Scott, supra, the Chancellor, among other things, said:
"It does not appear to be right; and yet I am unable to come to the conclusion, that this is such a fraud as will authorize this court to interfere and treat this decree as a nullity. I can discover no fraud in the procurement of this decree; nothing like a concealment or misrepresentation of facts or circumstance, whereby the accounting officer or the court could have been misled or deceived. Nothing appears here that did not appear before the Orphans Court. That court were the proper and legal judges of the amount of interest with which the accountants were to be charged according to the circumstances of the case. They investigated the subject, and adjudged upon it. Their judgment may be *Page 305 
erroneous; they may have thought proper to charge no interest, on the ground that none was received, or upon some other ground which cannot now be ascertained. This court is not, therefore, to conclude that it was occasioned by fraud or concealment on the part of the administrators. * * *
"It is not enough that the Orphans Court may have erred in judgment, as to a subject-matter properly before them; they must have been led into error by some fraudulent and unconscientious act or omission of the party to be benefited, or this court can take no cognizance of it."
In In re Hazeltine, 119 N.J. Eq. 308; 183 Atl. Rep. 357;affirmed, 121 N.J. Eq. 49; 187 Atl. Rep. 177, Vice-Ordinary Stein, among other things, said:
"The Court of Errors and Appeals held that an application to have an account opened is addressed to the sound discretion of the court; that fraud or mistake must be proved to the satisfaction of the court; that the burden of showing fraud or mistake is upon the applicant; that if an account is opened without legal proof, the proceedings will be set aside. Engle
v. Crombie, 21 N.J. Law 614; Johnson v. Eicke,12 N.J. Law 316; Hyer v. Morehouse, 20 N.J. Law 125. The phrase `to the satisfaction of the said Orphans Court' does not enable the court to dispense with proof, but was used `to indicate to them that that proof should be clear and satisfactory, and that they ought not in a doubtful case to open an account.' Johnson v. Eicke,supra. And it is well established that when an account, once settled, is opened upon proof of fraud and mistake it is not opened generally, but only in respect to the particular items connected with the fraud or mistake. In re Morris, 65 N.J. Eq. 699; Trimmer's Executor v. Adams, 18 N.J. Eq. 505."
The appellants charge that no inventory was ever filed by the executor and trustee because both the surrogate and the secretary of state have certified there is no inventory to be found in their respective offices. They say that no charge for a filing fee appears in the records of the surrogate of the County of Hudson.
Respondent's answer to that argument is that "the evidence is overwhelming that it was filed." It points to appellants' *Page 306 
argument in their brief (Brief No. 1, page 14) wherein they say:
"The executor, it is contended, committed a fraud, or at least a mistake, on this court when it filed its first account on January 3d 1922. In that account it charges itself as follows: To — amount of inventory and appraisement — $145,853.24."
The recital in the Orphans Court decree is a complete answer to the appellants' contention that no inventory and appraisal had been filed. The decree on the first intermediary account recites the amount of inventory and appraisal, and of the auditing of the account, and the inspection of the vouchers by the surrogate. Certainly, without an inventory and appraisal, and a deduction of the allowances therefrom, it would have been impossible to strike a balance in the estate. The decrees all show a balance. Section 58 of the Orphans Court Act (Comp. Stat. p. 3830) provides:
"Every executor and administrator shall make a true and perfect inventory of the goods and chattels, rights and credits and effects of the deceased, and cause a just appraisement of the same to be made by two discreet and impartial persons, which inventory shall be filed with the surrogate within three months after grant of letters testamentary or of administration, unless the orphans court for good cause shown, shall allow further time therefor; and if any executor or administrator shall fail to file such inventory with the surrogate within the time aforesaid, the surrogate shall report such neglect to the orphans court, and, if the said court so direct, shall cite him to render such inventory; and if he continue in default, the orphans court shall revoke the letters testamentary or of administration, and grant letters to some other person."
Nowhere does it appear that the surrogate reported any delinquency in the matter of inventory under this section. Section 57 of the Orphans Court Act, Ibid., reads:
"No inventory shall be received or admitted to be proved which is not full and specific in its details."
The provisions of section 121 of the Orphans Court Act,Ibid., directs that: *Page 307 
"The surrogate shall audit and state the accounts of executors, administrators, guardians and trustees, and place the same on the files of his office, subject to the inspection of any person interested therein, at least twenty days previous to the same being presented to the court, and shall report the same to the orphans court for confirmation and allowance on the day for which the same was noticed for settlement, or at such subsequent time to which the hearing shall have been adjourned."
The court's duty is clearly defined in the provisions of section 125 of the Orphans Court Act, Ibid., as follows:
"The court to which the account of any executor, administrator or trustee, or the final account of any guardian, shall be reported shall examine the said account and the vouchers and receipts for payments and disbursements claimed therein, and, if the same be found to be correct in all respects, the court, on due proof that notice of such settlement has been given and advertised, or that the parties have been cited as aforesaid, and no exception being made to the report of the surrogate, shall decree an allowance of the account as stated; provided, that in all cases where it appears that there is a balance due the accountant the court shall not decree an allowance of the account until the next regular term after that to which the report is made."
It would have been impossible for either the surrogate or the court to do what duty and official probity required of them without an inventory.
The duties of the surrogate and the court in a matter such as this under review is clearly set forth in the case of Conover
v. West Jersey Mortgage Co., 96 N.J. Eq. 441;126 Atl. Rep. 855, wherein Chancellor Walker speaks, in part, as follows:
"As is well known, it is quite impossible to settle an account in the Orphans Court without an audit. The surrogate shall audit and state the accounts of executors, administrators, guardians and trustees, c., and shall report the same to the Orphans Court for allowance. Comp. Stat. p. 3855 § 121. The surrogate shall not report any account to the Orphans Court for allowance and settlement unless the vouchers and receipts have been lodged with him. Orphans Court rule 17. To audit an account is to see that the accountant is charged with everything with which he is chargeable, and that nothing is placed on the credit side for which he is not justly entitled *Page 308 
to credit. 1 Koch. N.J. Prob. L. 642. * * * Whether or not accounts are excepted to, it is the duty of the court to scrutinize them and pass and confirm them only when, after proper vouching and auditing, it appears that they are correct and ought to be confirmed."
Prerequisite to the legality of a decree on accounting is the fact recited at the opening of the decree. Such recital in each of the decrees in question is: "The surrogate having audited and stated the account of The Trust Company of New Jersey," c. There then follows a recital of the next prerequisite, which is: "And the court having examined the said account and the vouchers and receipts for payments and disbursements claimed therein," c.
The first account shows that the first item of charge made by the accountant against itself is the following: "This accountant charges itself with the following: To amount of inventory andappraisement — $145,853.29." (Italics mine.) The only voucher by which verification or audit of this item could have been made, certainly must have been the inventory.
These recitals, taken together with the decree that in each instance is based on them, present an adjudication of the "audit."
22 Corp. Jur. 130 § 69, contains the following:
"There is always a presumption that official acts or duties have been properly performed, and in general it is to be presumed that everything done by an officer in connection with the performance of an official act in the line of his duty was legally done, whether prior to the act, such as giving notice, or determining the existence of conditions prescribed as a prerequisite to legal action, or subsequent to such act."
See, also, In re Sheriff of Monmouth County, 69 Atl. Rep. 305;State, Taintor, Pros., v. Mayor and Council of Morristown,33 N.J. Law 57; Mayor, c., ads. State, Batten et al., Pros.,32 N.J. Law 453; Mercer County Traction Co. v. United New JerseyRailroad and Canal Co., 64 N.J. Eq. 588; 54 Atl. Rep. 819; WestJersey Traction Co. v. Camden Horse Railroad Co., 52 N.J. Eq. 452; 29 Atl. Rep. 333.
"Judicial officers' action is presumed regular in absence *Page 309 
of contrary evidence and their acts presupposing other acts to make them legally operative are presumptive proof of performance of later acts." State, ex rel. Attorney-General v. Broadway
(Ark.), 93 S.W. Rep. 2d 1248.
Everything is to be presumed in favor of the regularity of the proceedings of a court of justice. Vanderveere v. Gaston,25 N.J. Law 615; Philadelphia and Reading Railroad Co. v. Little,41 N.J. Eq. 519; 7 Atl. Rep. 356; Plume v. Howard SavingsInstitution, supra; Wallace v. Hendee, 68 N.J. Law 574;53 Atl. Rep. 694; affirmed, 69 N.J. Law 675; 56 Atl. Rep. 1133.
A judgment or decree contained in the record imports absolute verity. Wasserman v. State, 103 N.J. Law 128;134 Atl. Rep. 664; State v. Savage, 79 N.J. Law 583; 76 Atl. Rep. 1079;Davis v. Tallon, 91 N.J. Law 618; 103 Atl. Rep. 236; Leonardis
v. Freda, 8 N.J. Mis. R. 887; 152 Atl. Rep. 239; Warner v.Public Service Co-ordinated Transport, 9 N.J. Mis. R. 328;153 Atl. Rep. 711; Lippincott v. Godfrey, 103 N.J. Law 407;136 Atl. Rep. 174.
That the inventory cannot be located in the archives will not overcome the presumption that the surrogate or the court audited the accounts.
The appellants assert that the statutory requirement of notice was not complied with. The court records do not sustain them. The first decree of February 10th, 1922, recites:
"And it having been proved to the satisfaction of the court that notice of its intention to settle said account on said 10th day of February, A.D. 1922, in this court, was given by said accountant according to law * * *."
The recital in the second, that of February 26th, 1926, is to like effect. The third and last decree, that of January 10th, 1930, recites:
"And it having been proved to the satisfaction of the court that notice of its intention to settle said account on said 10th day of January, 1930, in this court, was given by said accountant according to law, and notice of the settlement of said account having been mailed to all the persons interested in said estate. * * *" *Page 310 
This third account directly affects the interests of the infants Anne and Richard Schlemm. Under the will of the decedent, Richard Schlemm, his widow, Josephine Schlemm, became a life tenant; the first remainderman was decedent's son Ridgley; the interest of Ridgley's children in the remainder, as above stated, was contingent upon the decease of their father prior to that of the life tenant. Ridgley died on August 22d 1928, as heretofore mentioned. The life tenant, Josephine Schlemm, died a short time ago.
When the first accounting in 1922 and the second accounting in 1926 were filed, and were before the Orphans Court for confirmation and approval, the life estate was represented by Josephine, and the estate in remainder by Ridgley, her son. The appellants do not contend that there was any defect in the notice of either the first or second accounting to the life tenant and the remainderman. The notice given to the life tenant and the remainderman complied with the law and the requirements laid down in Woolsey v. Woolsey, supra. Ridgley's children did not then have a vested interest in the remainder; consequently, they were not such parties in interest as were entitled to notice of accountings. In Woolsey v. Woolsey, supra, the court said:
"The rule that all persons interested in the fund or property that is in question must be brought before the court in order to be bound by the result, is subject to some limitations, dictated by common sense, upon grounds of necessity or even of convenience. Where courts have to deal with property whose ultimate destination is in doubt, and which may, upon a certain contingency, go to persons not yet in esse or not yet ascertained, they must perforce proceed without the attendance of such persons, or not proceed at all. It results that such contingent interests are held to be bound if the interest be represented in the litigation by a trustee or (in some cases) bythe predecessor in estate. 1 Dan. Ch. Pl. Pr. 227, 228, 229,266; Story Eq. Pl. §§ 140, 142, 144, 145, 146, 147; 2 Spenc. Eq.Jur. 707; Dunham v. Doremus, 55 N.J. Eq. (10 Dick.) 511;Hale v. Hale, 146 Ill. 227; 33 N.E. Rep. 858." (Italics mine.) *Page 311 
 In Beam v. Paterson Safe Deposit Trust Co., 96 N.J. Eq. 141; 126 Atl. Rep. 25, the court said in part:
 "The notice of the settlement of the various accounts wasgiven in accordance with the provisions of the statute. Thisnotice operates as constructive notice to all parties interestedin the estate. In contemplation of the law they are all before the court, and all entitled to except to the account and be heard before the court. The decree of the court upon final settlement and allowance of the account is conclusive upon all parties, except in special cases enumerated in the statute. Exton v.Zule, supra." (Italics mine.)
See Boulton v. Scott, supra, and Den v. Crawford,8 N.J. Law 90.
The third account was filed in December, 1929, and approved by decree dated January 10th, 1930. As stated Ridgley had died previously, leaving him surviving, his widow, Lillian, and the two infant children, Anne and Richard. Paragraph 18 of the petition admits that "Notice of the settlement thereof was mailed to the petitioners herein; there being no objections filed to said account, it was duly approved by this honorable court on the 10th day of January, 1930."
Where minors were interested in accountings, rule 18 of the Orphans Court, in force at the time of the filing of the third accounting, provided that notice "shall be mailed to the guardian of such minor, if any; if there be no guardian then to the parent or other person standing in loco parentis to said minor." The record indicates the mother, on the third accounting, received her own notice, and a notice that was addressed to each of her children. Neither the statute nor the Orphans Court rule 18 provided that the notice intended for the minors should or should not be addressed to the minors. The requirements were that the notice be mailed to the parent or to one standing in locoparentis. The statute, and the rule of the Orphans Court on notice were observed.
Rule 18 of the Orphans Court has been succeeded by rule 24 of the 1941 revision of the Orphans Court rules. It differs from the old rule 18 in that it provides for the appointment *Page 312 
of a guardian ad litem for minors. The rule (24) as it now stands, provides: "In all cases in which a minor or an incompetent is such party in interest, a guardian ad litem
shall be appointed as in the rules provided."
The appellants' contention that the ruling of the Court of Errors and Appeals in Rothenberg v. Franklin Washington TrustCo., 129 N.J. Eq. 361; 19 Atl. Rep. 2d 640, requiring the appointment of a guardian ad litem for infants, should have been observed in the instant case at the time notice was given of the third accounting, is without force. Neither the statute nor the rules of the Orphans Court at any of the times of the accountings required it.
The parties in interest during the periods of the accountings seemed to be well satisfied with the way the estate's investments were handled. They accepted the earnings arising from the stock investments without objection. The value of the stocks in question and the amount of dividends derived therefrom showed a constant and steady increase until sometime after the third accounting. I find no evidence of fraud or mistake in any of the three accountings. The 1929 accounting shows the assets to have been at about their peak in value. There was no reduction in dividends of the estate until a year or two after the third accounting.
It was held in In re Opitz, 128 N.J. Eq. 487; 17 Atl. Rep.
2d 271, that where a testator left shares of stock in a corporation, and they reached the hands of his trustee, such fiduciary is not responsible for the shrinkage in value of the stock, if the fiduciary exercised good faith and reasonable discretion in continuing to hold such stock. I find no evidence of bad faith on the respondent's part during the period about which the appellants complain. Their then judgment produced an enhancement of assets that absolutely contradicts any suggestion of fraud and bad faith.
I believe all the interested parties in the estate had knowledge of the character of the estate's investments by the decedent, which were continued to be held by the executor-trustee respondent, and that they were in a position to protest the retention of those investments if they were not satisfied. They *Page 313 
raised no objection. However, over the three accounting periods the estate suffered no loss. What happened to its assets after the third accounting is not here involved.
The action of the Orphans Court is sustained.