11 N.J. Super. 286 (1951)
78 A.2d 156
IN THE MATTER OF THE ESTATE OF RICHARD SCHLEMM.
Superior Court of New Jersey, Hudson County Court Probate Division.
Decided January 2, 1951.
*288 Mr. Peter Bentley, for the beneficiaries.
Mr. William H. Speer, for the trustee.
ZIEGENER, J.C.C.
This matter comes before the court on exceptions by the beneficiaries to the fourth intermediate account *289 filed by the trustee, The Trust Company of New Jersey, on June 6, 1939, and on exceptions to the master's report by the beneficiaries and the trustee, filed herein on November 1, 1949. It is apparent that the great delay in bringing the matter to a conclusion was due to the extensive hearings and voluminous testimony taken before the master, but the present rules of court will preclude such a lapse of years before a matter is determined. Upon the filing of the exceptions to the account the matter was referred to the master, who commenced hearings on September 17, 1941, and concluded same on August 28, 1948. Subsequent to the filing of the master's report that trust beneficiaries and the trustee filed exceptions thereto, and final argument was had before me on October 16, 1950.
The trust here involved was created by Dr. Richard Schlemm, who died on October 3, 1920, leaving a last will and testament which was admitted to probate on October 15, 1920. The residuary clause of said will provided that "All the rest, residue and remainder of my estate, real and personal, and wheresoever situate, I give, devise and bequeath to my executor hereinafter named in trust, for the following uses and purposes:"  then the purposes were stated. The Trust Company of New Jersey was named executor, and consequently acted as trustee. Said company conducted a general banking business in Jersey City, N.J., and as a component part thereof had a trust department equipped to handle trust estates such as this. The decedent had been affiliated with many banking institutions during his lifetime, and some of these institutions subsequently merged into the Trust Company of New Jersey, the trustee herein, and of which institution decedent was a vice-president and director. The major portion of the trust estate consists of stock in that company. The trust provisions of the will allocated four-fifths of the balance of income to decedent's wife, and one-fifth to his son, Ridgley, and provided that upon the death of the wife and son, the balance of the assets and income remaining should be paid over to the issue of Ridgley, and Ridgley's wife was to receive $15,000. Ridgley, the son, died on August 22, *290 1928, and Dr. Schlemm's wife died on November 7, 1940. Ridgley left him surviving his wife, Lillian M. Schlemm, a daughter, Anne Schlemm (now McEllen), and a son, Richard Schlemm, all of whom are the beneficiaries herein.
The decedent left two certificates of the Trust Company of New Jersey stock totaling 233 shares, par value $100 each, carried at a value of $340 per share, or a total value of $79,220. The accounts filed by the trustee, prior to the one herein, showed various stock dividends, subscription warrants, and a reduction in par value of the shares and reissue thereof, so that when the third account was filed there were a total of 2,304 shares, par value $25 per share, and carried at $53.15 per share, or a total value of $122,461.
The three accountings filed in 1922, 1926, and 1930, respectively, were approved by the Orphans' Court, and the trust beneficiaries subsequently sought to have them reopened by rule to show cause, alleging irregularity, neglect, default, mistake and fraud. This action was taken merely to reopen said accounts and not to surcharge the trustee. The court, on September 30, 1938, dismissed the rule to show cause on the ground that no fraud or mistake was shown to justify setting aside the decrees approving said accounts. On appeal to the Prerogative Court this action was sustained. In re Schlemm, 130 N.J. Eq. 295 (1941). Therefore, I will start with the premise that the value of the 2,304 shares of The Trust Company of New Jersey stock, at the outset, was $122,461, and the total value of 45 shares of Colonial Life Insurance Company stock, also left in the trust estate by decedent, was $13,850, as shown by the third account. On this fourth account the 2,304 shares of The Trust Company of New Jersey stock were listed at a total value of $2,304, at a value of $1 per share, and the stock of the Colonial Life Insurance Company at a total value of $6,750. So, in the ten-year period between the filing of the third and fourth accounts, 1929 to 1939, the Trust Company stock decreased in value by $120,157, and the insurance stock decreased in value by $7,100.
Decedent's will authorized the trustee "to receive, hold and manage said residuary estate, to invest and re-invest the same, *291 and collect and receive the income therefrom during the life of my wife, Josephine Schlemm," and to pay out income as hereinabove stated. In addition, he authorized the "executor and trustee, in its discretion, to retain any investments and securities which I may own at my death, notwithstanding they may not be of the class in which by law trust funds may be invested." The trustee alleges that the provisions of R.S. 3:16-12 are applicable in this case. Said statute provides that "when a testator has invested in municipal bonds, or in bonds secured by mortgages, or in bonds or shares of stock of a corporation, and the same comes into the hands of his executor, administrator with the will annexed, or trustee, to be by him administered, such fiduciary may, in the exercise of good faith and reasonable discretion, continue such investments and in such case he shall not be accountable for any loss by reason of such continuance." (P.L. 1899, p. 236; C.S., p. 2271, § 34.) The trustee contends it complied with said statute and in support thereof argues that its trust department was well managed; that the testator chose the stock himself; that the opinion of the directors and officers was made in good faith; the financial conditions prevalent in the world after 1929; the stock market crash; the national banking holiday and the worldwide economic depression.
The master's report, filed November 1, 1949, advised and reported that the trustee should be held responsible for the depreciation of the stock and fixed the liability as to the Trust Company of New Jersey stock as the difference between $32 per share, the high value for the year 1933, and $1 per share, as shown by the fourth account; that the trustee be surcharged with the loss of income on said stock from October 1, 1933, which was the last date any dividend was paid on the stock; that the trustee be charged with simple interest on said stock from October 1, 1933, at the rate of 3% per annum; that the trustee be held for the difference between $13,850 and $7,100, a loss of $6,750, on the Colonial Life Insurance Company stock. (This is evidently a transposition of figures, as the account shows the present value as $6,750, and the third account a value of $13,850, which would be a loss of $7,100.)
*292 The lengthy exceptions by both the trustee and the beneficiaries to the master's report can be concisely stated as follows: The beneficiaries contend that the trustee should be liable for the difference between $150 per share and $1 per share on the bank stock; that the interest thereon should be 6% per annum from December 31, 1930; that the trustee should be surcharged the difference between $58,500, the alleged value of the insurance stock, and $6,750; that the trustee could and should have applied to the court for advice; that the trustee continued to hold shares of its own stock in the trust with the full knowledge that they were dropping in value and were bound to become valueless, or at most worth $1 per share; that the trustee, without legal right, or notice to the beneficiaries, by illegally voting the estate's stock of said trustee, reduced the par value of the 2,304 shares, of a par value of $25 each, to a subsequent par value of $2.50 per share, in three steps; that the fact the directors and officers of trustee have continued to hold their own shares of this stock is immaterial in this proceeding; that the trustee ignored the steady depreciation of its stock, attempting to save itself at the expense and loss of the beneficiaries; that the trustee caused great financial loss to the estate; that the trustee fraudulently mismanaged the trust for its own personal aid and gain, and subordinated the cestui's interest to its own; that trustee permitted ten years to elapse between filing the third account and the one here questioned, and took no steps to protect said stock held by the estate, but did actively, fraudulently, and for its own benefit, separate and apart from any interest in said estate, conjure a plan or scheme whereby all value to said stock would, and did, disappear, solely in an effort to save said trustee. In brief, the beneficiaries allege that as a result of the actions of the trustee they suffered great loss, and the master should have advised that the trustee be surcharged a greater amount as justified by the evidence. The trustee alleges that the master was not justified or warranted in holding the trustee liable for any surcharge, and cites many authorities in various jurisdictions to uphold its contentions that the master erred in concluding *293 that the crisis of 1929 could not rationally be envisioned as of a "temporary character" after about three years, and would transmute an authorized and legally authorized continued holding into an investment; and trustee further contends that these conclusions fly violently in the face of both factual and legal principles; that it was under no duty, or obligation, to appeal to the court for instructions or directions, and not doing so was not, in itself, evidence of negligence.
What was the duty of the trustee in this case? As a matter of public policy and consistent with the decisions of our courts it is well settled that a trustee is under a duty to the beneficiaries, in administering a trust, to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property; and if the trustee has greater skill than that of a man of ordinary prudence, he is under a duty to exercise such skill as he has. Restatement of Trusts, § 174; Ross v. Savings Inv. & Trust Co., 123 N.J. Eq. 288, at page 291 (E. & A. 1938). A stricter standard of care and skill is applicable to corporate and other professional trustees than that which is applicable to individual non-professional trustees. (See Scott, Trusts, § 174.1.) An in cases wherein the trustee is administering an estate in which the major portion of the assets is stock in his or its own company, the standard of care must be even greater than in any other case. A trustee, in such an instance, cannot manipulate the stock to his own advantage, and to the detriment of the beneficiaries. A trustee cannot serve two masters, and when he does, he is disregarding the welfare of the trust. A trustee cannot look to his own interest as against that of the trust beneficiaries.
Now, the issue becomes fundamental: Did the trustee exercise the degree of care required of it with reasonable discretion and good faith in administering the trust?
There is no question that the decedent gave wide latitude to the trustee in his will, as previously stated. In addition, decedent had made the investments himself during his lifetime, and expected that the trustee would continue same. However, it was certainly not his intention to have said trustee *294 retain the stock until same was worthless, or almost so. It appears to me that the trustee, at least, should have applied to the court for instructions, or advice, when it found itself in a dilemma concerning the stocks. And even assuming that the trustee felt that the economic crisis of 1929 was only temporary in character, immediate subsequent events did not justify its continuing that conclusion, yet the trustee continued to hold the stock and made no attempt to save the beneficiaries. Can it now be said that this action was justified? To the contrary, the trustee showed an absolute lack of good faith and reasonable discretion. As stated by the court in Shanley v. Fidelity Union Trust Co., 108 N.J. Eq. 564, at page 565 (Ch. 1927), and recently reiterated by our Supreme Court, in Liberty Title and Trust Co. v. Plews, 6 N.J. 28 (1950):
"They are our trustee and the law demands of trustees the utmost fidelity. It does not tolerate personal dealing with the trust estate nor permit the making of a penny's profit. The rule is grounded in sound morals and is reflected in the supplicating words of the Lord's prayer, `Lead us not into temptation.'"
Certainly the trustee had no right to vote the shares of its own stock, in the trust, for the purpose of obtaining a loan to carry on its banking operations. It is apparent that the trustee bank's financial structure was in jeopardy at the time this stock was voted, but if the trustee had attempted, in good faith, to dispose of this stock prior thereto, that question would never have arisen. The Shanley case, supra, is comparable to the situation herein. In that case the trustee bank threatened to sell stock of another company held in the trust, and some of the directors of the trustee were also directors of that company. On objection by the beneficiaries the court held that "the directors of our trustee are in conscience bound to consider only the welfare of our wards and strive for the best price obtainable." Said trustee bank was also interested in securing the most favorable terms for the company, due to the directorship situation, when attempting to sell the trust stock, and the court said: "In the dilemma in which it found itself the course open to our trustee was to apply to the court *295 for instructions, not to compel our wards to appeal for protection." In the present case the trustee herein continued to hold the stock with knowledge that the value was steadily decreasing, and decreasing by the trustee's own action. When the assets and liabilities of the trustee, as well as its surplus and undivided profits, were dropping from 1933 to 1939 they were further warned that the value of the stock was diminishing, and still they did nothing. The trustee cites the case of In re Cross, 117 N.J. Eq. 429 (E. & A. 1935), as authority for demolishing the holding of the Shanley case, supra, as to the requirement of a trustee to apply to the court for instructions. The Cross case is not on all fours with the Shanley case (the facts of the latter having already been recited herein) nor is it the same as the present case. In the Cross case the trustee could not sell the corporate securities in the trust (which were not those of the trustee itself) without the approval and designation of decedent's brother. As to the latter, the court said (at page 433): "He had nothing personal at stake. He was holding * * * for the better prices that he was sure the stocks would reach." The converse is true in the Shanley case, where the trustee, a bank, wanted to sell the trust stock and at the same time wanted to buy it at the lowest price to benefit another interest. In other words, they wanted to do right by both sides, without any legal reason for acting against the interest of the trust beneficiaries. The Shanley case was not altered by the decision in the Cross case, and the latter does not have any bearing on the trust here in question. It must be remembered that the major portion of the stock in this trust was that of the trustee itself.
Who knew the day-to-day situation of this stock? Who knew that the stock was consistently declining in value? Who knew that the stock manipulations of the trustee bank would lessen the value of the shares of trust stock? The answer to all these questions is, the trustee. And knowing all these things the trustee still did nothing. When days, weeks, months, and years began to go by and the stock continued downward, the "temporary character" of the financial crisis had become somewhat extended. When the trustee intended *296 to manipulate its stock to benefit its financial structure, and later voted the trust stock for that very purpose, it knew that virtually all of its securities, including those in this trust, were assigned to the federal agency which loaned it money. It is apparent the trustee was only interested in continuing banking operations, which was a logical personal action, but at the same time it decided, evidently, that the trust could remain in statu quo to await the eventual outcome. The conduct of the trustee indicates that it intended to keep the stock in the trust regardless of the outcome. If the trustee had the welfare of the beneficiaries in mind, which it should have, the least it could have done was to apply to the court for advice or instructions. Such actions by a trustee, as evidenced in this case, cannot be condoned, especially where the stock of the trust estate is predominately stock of the trustee itself. In my opinion, the trustee herein did not comply with the duty imposed upon it to act in good faith and with reasonable discretion. The trustee was guilty of self-interest, self-dealing and flagrant mismanagement of this estate. (See Liberty Title & Trust Co. v. Plews, supra.)
I will approve the master's report in so far as liability is imposed upon the trustee as to the Trust Company of New Jersey stock in the trust, but have come to a different conclusion as to the amount thereof. I am satisfied there was a market for trustee's stock during the years 1929 through 1940, as indicated by the testimony of Mr. Dwyer of Bailey & Dwyer Co., investment and security brokers. The fact that only 324 shares of this stock were sold in 1929, 289 shares in 1930, 697 in 1931, and 1,239 in 1932, through Bailey & Dwyer Co., does not necessarily indicate that there was a shallow market for this stock. We have no way of knowing whether or not anyone desired to sell any more shares than that number each year, or whether or not they could be sold. However, these sales do indicate that during 1930 stockholders were retaining the stock, because less shares were sold in that year than in 1929, possibly to await the trend thereof and in an effort to ascertain whether or not the crisis was of a temporary character. And although it is evident that more shares *297 (5,265) were sold by Mr. Dwyer's firm during 1933 than any other year between 1929 and 1940, the trustee must have known that almost two and one-half times as many shares were sold in 1931 than in 1930, indicating that many more stockholders were concluding that this "temporary crisis" was going to be quite lengthy. And further justification for reaching that conclusion can be found in the sale of twice as many shares in 1932 as in 1931, of which the trustee must have had knowledge; they were its own stocks. The trustee sought to show that an offer to sell 20,000 shares (approx.) of its own stock, held in various trusts, would cause the value thereof to go lower. However, our only concern is the 2,304 shares held in this trust. No one can accurately predict what would have developed had these shares been offered for sale. The fact remains that they were not. I therefore find that the trustee should have disposed of the 2,304 shares of The Trust Company of New Jersey stock, in this trust, during the year 1932, and it will be surcharged the difference between $53 per share, the high value for that year, and $1 per share, the present value.
I will approve the master's report as to the interest to be charged on the above stock, i.e., at the rate of 3% per annum, simple interest, from October 1, 1933, the date of the last dividend on the stock. The amount of interest should be one that is equitable under all the circumstances, and should approximate, as closely as possible, the amount the beneficiaries would have received, except for the trustee's derelictions. In re Ebert, 136 N.J. Eq. 123 (Prerog. 1945); Melosh v. Melosh, 125 N.J. Eq. 486 (Ch. 1945).
I will approve the master's report as to the shares of Colonial Life Insurance Company stock, in this trust, and the trustee will be surcharged the sum of $7,100, the difference between the value at the third accounting and fourth accounting. The evidence shows that the directors of the insurance company were also directors of the trustee bank; the president of the trustee bank was related to the president of the insurance company. The stock should have been sold for the highest price obtainable within a reasonable time after the *298 decree on the third accounting, for the same reasons as outlined herein as to the Trust Company of New Jersey stock. No interest will be allowed thereon because the income received from this stock would approximate 3% simple interest per annum.
Therefore, the exceptions to the master's report filed by the trustee will be dismissed, and the exceptions thereto filed by the beneficiaries will be allowed as indicated herein. The trustee's fourth account is hereby set aside, and it is ordered that a fourth account be filed embodying the findings herein.